SEYBOLD MACH. CO. v. FEEHAN.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1914.)

No. 2424.

1. NEGLIGENCE (§ 136*) — CONTRIBUTORY NEGLIGENCE — WHEN QUESTION FOR JURY.

In an action for a personal injury based on the alleged negligence of defendant, where the evidence on the issue of contributory negligence is conflicting, it is a question for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

2. MASTER AND SERVANT (§ 332*)—INJURIES TO THIRD PERSONS—LIABILITY—QUESTIONS FOR JURY.

Defendant sold certain paper cutting machines to be erected by it in a printing office in another city, and sent an agent to install the same. Almost as soon as the last machine had been set up the agent started to return, but before his train had left was sent for by the purchaser because plaintiff, who was to operate one of the machines, could not make it work properly. He returned, and the evidence as to what was done was in some conflict, but in explaining the operation of the machine to the foreman, the agent moved the lever, which caused the cutter to fall, and plaintiff's hand was caught and cut off. There was evidence for plaintiff that the machine had not been tested to its capacity, and was not in complete running order; that plaintiff was directed to do certain things, and that the agent himself made further adjustments. Held, that it was not error to submit to the jury the question whether the agent, when he moved the lever, was acting for defendant, and not for the purchaser, and within his authority as defendant's agent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1274–1277; Dec. Dig. § 332.*]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John E. Sater, Judge.

Action at law by Jerry A. Feehan against the Seybold Machine Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Theodore Horstman, of Cincinnati, Ohio, for plaintiff in error.

R. G. Fitzgerald, of Dayton, Ohio, for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. The plaintiff in error, the Seybold Machine Company, seeks reversal of a judgment against it in favor of the defendant in error, Jerry A. Feehan, for $6,000, for the loss of his right hand, claimed to have been caused by the negligence of its servant, Elmer G. Page. It is a manufacturer of paper cutters at Dayton, Ohio, and, the latter part of November, 1910, sold the Courier Journal Job Printing Company, operating a printing establishment at Louisville, Ky., two such cutters, for $1,750 in money and an old cutter. By the contract it was "to erect" them on the printing company's floor and the "terms of settlement," i. e., times of payment of the money consideration, were "to be agreed upon when the machines were erected." Pursuant thereto it shipped them, in unassembled parts, to Louisville, and sent Page there to erect them. He began Thursday, December 15, 1910. By Saturday evening he had one in operation, and by Monday morning, the other. Feehan was the servant of the printing company. He was to operate one of the cutters when erected, and assisted Page in his work on the cutter. After both were in operation, and before noon on Monday, Page sought and obtained from the printing company, acting through its general manager, F. P. Allen, a written statement addressed to the machine company in these words:

"Your Mr. E. G. Page has finished the installation of the two new 50-inch cutting machines. He seems to have been very careful and conscientious in his work and the machines seem to start all right."

Before giving the statement Allen inquired of the foreman as to the cutters, and was told by him that they appeared to be all right. After the noon recess Page returned to the establishment, but left shortly thereafter, i. e., about half past 1, to take a train for home, which left at 2:10 p. m. No "terms of settlement" had been agreed on before he left. After he left, and before his train departed, trouble arose in connection with Feehan's cutter. It had a safety device to prevent its knife repeating after a cut by locking it. Its brake band was loose, and this caused the knife to lock. The machinist refused to attempt to unlock it. Some one, probably Murray, the operator of the other cutter, attempted to do so and failed. It may be taken that the failure to unlock it was due to not carefully attending to the instructions on the cutter. Resort was had to Page to get rid of the trouble. The foreman went to the depot for him, and, finding him in his train, waiting its departure, brought him back. He at once unlocked the knife and put the cutter in operation again. He remained about it for some little time, and, whilst there, Allen, the general manager, approached him and inquired as to the cause of the trouble. Feehan was then engaged in putting paper on the table of the cutter and smoothing out the air between the sheets, preparatory to cutting it. In doing this, at times, his right hand would project under the knife. Page, with his left hand on the lever, started to explain to Allen in answer to

his inquiry and, whilst so doing, turned the lever and put the knife in operation. In its descent it caught Feehan's hand and cut it off at the wrist.

So far the parties do not differ as to the facts of the case. In other particulars they do. Page alone testified for the machine company as to what happened at Louisville. He testified to the following additional facts: It was Feehan's cutter that was put in operation Saturday evening. It was then turned over to him to operate, and he operated it from the time work began Monday morning until the knife locked, except at the noon recess. In so operating it he allowed oil to get on the brake band, and this was what rendered it loose. He, Page, had nothing whatever to do with the cutter from the time he turned it over to Feehan, Saturday evening, until he returned from his train Monday afternoon. After putting it in operation again he had nothing to do with it except in his attempt to explain to Allen, in answer to his inquiry, the cause of the trouble. Before he moved the lever he warned Feehan to look out.

On the other hand Feehan testified as follows: It was the other cutter and not his which was put in operation Saturday evening. His was not so put until Monday morning. After all its parts had been assembled together Page directed him to oil it and to distribute the oil by exercising it. He then directed him to cut two small jobs on it to test it. The capacity of the machine was six inches. Each of these two jobs was an inch. The noon recess arrived when he had finished them. The cutter worked stiff and, at starting, after the noon recess, Page directed him to again oil it and to distribute the oil, and when he had done this, to wash off the bed and powder it up to make the paper slide. He had not finished oiling when Page left for the train. When he left he remarked:

"I think everything is all right. I believe I will go to the depot and go back to the factory. Everything seems to be all right."

It was when he pulled the lever after powdering that he found the knife locked. After Page returned and had put the cutter in operation again, he directed Feehan to fill it with paper to its capacity in order to test it. His words were:

"Go ahead; put as much paper as you can in this machine. I want to try this good before I go away from here any more."

It was pursuant to this direction that he was putting paper in the machine at the time of the accident. It then lacked 2 or 1½ inches of being full. He did not allow any oil to get on the brake band, and Page gave no warning before moving the lever. His testimony was corroborated to a certain extent by that of other servants in the establishment. Murray testified that Page in putting the cutter in operation after his return from the train tightened the brake band.

The negligence alleged was failure on Page's part to give Feehan warning before he put the knife in operation. The machine company denied that Page was thus negligent, and that he was then its servant, and pleaded contributory negligence, which in turn, was denied by Feehan. On the issues thus made the case went to the jury. The

errors assigned are the refusal, at the close of all the evidence, to instruct the jury peremptorily to find for the defendant, and certain portions of the charge to the jury, all of which rulings were duly excepted to.

[1] The stress of the argument is on the refusal to give the peremptory instruction. It is not urged that the question as to Page's negligence in not giving warning before turning the lever was not for the jury. The position is that the questions as to Feehan's contributory negligence, and as to Page being the machine company's servant at the time of the accident, particularly the latter, should have been decided as a matter of law adversely to the plaintiff. That, as to the former question, is based on Feehan's admission that he saw Page's hand on the lever before he put his hand under the knife. It is urged that ordinary care for his own safety required that he, seeing this, should not have put his hand thereunder. But it cannot be said, as a matter of law, that this fact by itself was such an indication of danger that he should have refrained from so doing. He knew that Page knew what he was doing, and, according to his testimony, he was doing it by Page's direction. The knife could not be put in operation without two movements of the lever. Page had hold of it with his left hand, and was pointing with his right hand down at the safety device and about to explain to Allen the cause of the trouble. In view of these several considerations it was for the jury to determine the question of contributory negligence.

[2] The position, as to the other question, is based on the view of the case presented by the testimony of Page, as to the particulars hereinbefore set forth, in connection with those as to which there is no dispute. It is urged that Page before he left the establishment for home had done all that the machine company had agreed, and that he had been sent to Louisville to do and had turned the cutter over to the printing company and Feehan, its servant, for operation. The cutter had been accepted and the printing company had given a statement to the effect that Page had finished his work. Thereafter the situation calling for any further action on his part arose out of the carelessness of the printing company's servants, that of Feehan, in allowing oil to get on the brake band, and that of the one, who attempted to unlock the knife, in not following the instructions on the cutter. Page's action, therefore, after his return from the train, in connection with the cutter, was not action for and as the servant of the machine company, but for and as the servant of the printing company. It is thus sought to bring this case within the decisions, a number of which are cited, holding that the services of one's general servant may be transferred from him to another as to a particular matter, and that in such a case, ad hoc, or pro hac vice, he becomes the servant of such other person. But this position, if otherwise sound, is subject to the criticism that it ignores the testimony on behalf of Feehan, in so far as it conflicts with that of Page as to those particulars. According thereto such is not the true view of the case. This made it for the jury to determine what was the true view thereof, unless, indeed, it can be said that under that testimony also Page, at the time of the accident, was the servant of the printing company, and not that of his general master, the machine company   But this cannot be said.

By the contract of sale the machine company was "to erect" the cutters on the printing company's floor, and Page was sent to Louisville to carry out the contract. Webster defines "erect" as meaning "set up; hence, in machinery, to put together in position for use." To put machinery together in position for use is to put it in good running order. The employment of Page, therefore, called for his putting the cutters in question in good running order on that floor. It was in the course and within the scope of that employment for him to test them to their capacity to see if they had been put in good running order. And it was in and within such course and scope for him to explain to the printing company the cause of any trouble that might arise whilst he was erecting them and putting them in good order. Now, according to the testimony on behalf of Feehan, in the particulars wherein it conflicted with that of Page, the latter left the printing establishment without doing all that he might have done under his employment. Feehan's cutter was working stiff. It needed further oiling to make it operate smoothly. It called for washing and powdering, and had not been tested to its capacity. Possibly his desire to take the next train for home is what led him to do so. But the fact that he left sooner than he needed to have done gave no claim on him, on the part of the printing company, to return, if the locking of the knife of the cutter was not attributable to him. That testimony, considered by itself, permitted a finding that it was so attributable, in that he had not tightened sufficiently the brake band in the first instance. If such was the case the printing company did have such a claim on him, and his return was to do that which he was sent to Louisville to do, and which he had not theretofore done, to wit, put the cutter in good running order. In this view of the matter, not only his return and putting the cutter in good running order, but also his testing it to its capacity, and his attempt to explain to Allen the cause of the trouble, whilst waiting for the test, was action on his part as the servant of the machine company. The fact that the printing company gave him the written statement did not make it otherwise. It meant, not that Page had put the cutters in good running order, but that it appeared or seemed that he had.

But we would not be understood as holding that, to sustain the ruling now in question, it is essential that the cause of the brake band being loose was that it had not been sufficiently tightened in the first instance, and that it cannot be sustained on the basis that the cause thereof was that Feehan had allowed oil to get on the brake band. Apart from the consideration that, possibly, it may be true to say that in the oiling Feehan was acting for the machine company, it is sufficient to uphold the ruling that the printing company claimed that the trouble was due to Page's not having put the cutter in good running order, whatever may have been the fact as to that. Treating the case, therefore, as going no farther than presenting the fact that Page's return was to meet and satisfy such a claim, his action, thereafter, was for and as the servant of the machine company, and not for and as the servant of the printing company. Nor can it be said as a matter of law that such action in that contingency was not action in the course and within the

scope of his employment.  It was at least a question for the jury to determine whether it was.

Assuming that at the time of the accident Page was acting for and as the servant of the machine company, and that his action was in the course of and within the scope of his employment, there can be no question as to its being liable for the consequences of his negligence.  Necker v. Harvey, 49 Mich. 517, 14 N. W. 503; Crandell v. Boutell, 95 Minn. 114, 103 N. W. 890, 5 Ann. Cas. 122.

This brings us to the portions of the charge to the jury complained of.  One of two of them is a general statement of law, and the other an application thereof to the case in hand.  The first is in these words:

"The rule of law is that a master, an employer, is responsible for the torts of his servants, done with a view to a furtherance of the master's or employer's business, whether the same be done negligently or willfully, but within the line of the servant's duty, and the fact that the servant in committing the tort or wrong may have exceeded his actual authority, or even disobeyed his express instructions, does not alter the rule."

The other is in these words:

"If what Page did in showing Allen, the job-printing company's manager, what caused the trouble, and which he had just corrected, was done, with a view of furthering the defendant's business and within the line of Page's duties as the defendant's employé, and if Page, while he was showing Allen, was guilty of negligence which was the direct, proximate, and sole cause of the plaintiff's injury, then the defendant is liable, and even if Page in what he did in showing Allen exceeded the actual authority given him by the defendant as its agent, or even if he disobeyed the defendant's express instructions.  But if what Page did in showing Allen was not done with a view of furthering the defendant's business and within the line or scope of Page's duty as defendant's employé, then the defendant is not liable, even though Page was guilty of negligence which caused the injury."

The only criticism of these portions of the charge which has been made is that the court should not have submitted to the jury the question whether Page, at the time of the accident, was acting in the line or scope of his duty, but should have held as a matter of law that he was not.  But for the reasons heretofore given it could not properly have so held.  The thought and wording thereof were evidently taken from the opinion in the case of Crandall v. Boutell, supra, and find justification therein, as well as in the cases cited therein, which include the cases of Philadelphia, etc., R. R. Co. v. Derby, 14 How. 468, 14 L. Ed. 502; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 10 Sup. Ct. 175, 33 L. Ed. 440.

There are three other portions of the charge complained of.  They all relate to the matter of the acceptance of the cutters by the printing company.  Two of them put that question to the jury.  They are in these words:

"It is for you to say, taking all the facts and circumstances together, everything that appears in this case touching the matter, whether or not there was an acceptance of these new machines, and whether the parties had proceeded to that point in which there was an acceptance."

And:

"It is proper for you to consider along with that also, as a part of this evidence—because you must look to it all—whether or not there had been

terms of settlement agreed upon as between the parties. Had they reached that stage? You must determine the question of acceptance of the machines from the evidence."

The other was to the effect that, in a certain contingency, the defendant was liable even if there had been an acceptance. It is in these words:

"There is one condition under which, even if there was an acceptance of the machines, the defendant may still be liable. If you find that Page went back from the train after the machine became locked, and took charge of it for the purpose of unlocking and putting it in running order, and that thereafter, in answer to Allen's question as to what was the cause of the trouble, he proceeded to show Allen, and that in doing all this he was acting in furtherance of his employer's business and within the scope of his authority, and if in showing Allen he was negligent, and that negligence was the direct, sole, and proximate cause of the plaintiff's injury, then the defendant is liable, whether the machines had been accepted or not. But if the machines had been accepted and Page was not back there for the defendant to unlock the machines, and was not showing Allen how the trouble occurred, in the furtherance of the defendant's business, or acting for it within the scope of his authority, and was guilty of negligence which directly and proximately caused the injury to this plaintiff, then the defendant is not liable."

No special criticism is made of these portions of the charge. We have nothing before us save that they were excepted to and have been assigned for error. Really, as the last of them recognizes, the matter of the acceptance of the cutters was an immaterial question in the case. The vital question therein, apart from those as to Page's negligence, and Feehan's contributory negligence, was as to whether Page, at the time of the accident, was acting in the course and within the scope of his employment, or to adopt the words of the court below "in the line of his duty," or "in the scope of his duty," or "in the scope of his authority," and, in this and the other portions of the charge quoted, this question was put to the jury, and it was told that it could not find for the plaintiff unless it was. No possible harm, therefore, came to the defendant in putting the question of the acceptance to the jury.

Finding no error in the proceedings below, the judgment is affirmed.