THE CITY OF MAROA, Plaintiff-Appellee, v. ILLINOIS CENTRAL RAIL-ROAD, Defendant-Appellant.

Fourth District   No. 4—91—0736

Opinion filed May 14, 1992.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, Michael A. Pollard, John C. Filosa, and Maureen J. McGinnis, of counsel), and Erickson, Davis & Murphy, Ltd., of Decatur (Garry E. Davis, of counsel), for appellant.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (Darrell A. Woolums and William M. Rice, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Illinois Central Railroad (IC) appeals from a summary judgment entered by the circuit court of Macon County in this declaratory judgment action initiated by plaintiff the City of Maroa (Maroa). In bringing this action, Maroa sought a declaration that IC has abandoned and forfeited its interest in the 200-foot right-of-way within the city limits of Maroa and that Maroa is the owner of this property. IC is a Delaware corporation which is the successor in interest to the Illinois Central Railroad Company (Illinois Central), the charter for which was approved by the Illinois General Assembly on February 10, 1851.

On appeal, the only issue is whether the trial court improperly granted summary judgment because a genuine issue of material fact remains with regard to the right, title, and interest in the subject railroad right-of-way. We affirm.

Maroa's complaint alleged, and IC's answer admitted, that (1) on or about June 4, 1990, IC filed a "Notice of Exemption" with the United States Interstate Commerce Commission stating its intention to abandon 10.5 miles of railroad right-of-way in Macon County, including its right-of-way through Maroa; (2) for two years prior thereto, no traffic was moved over said line; and (3) thereafter, the track and ties were removed. IC admits in its brief that the notice of exemption became effective July 27, 1990 (see 49 C.F.R. §1152.50(d)(3), at 354 (1990)). As shown in the documents attached to

the motion for summary judgment, the abandoned right-of-way runs from Forsyth to Maroa. The portion of the right-of-way sought by Maroa lies in sections 2 and 11, township 18 north, range 2 east of the third principal meridian.

Pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005), a party may move for summary judgment and may file supporting affidavits. The opposing party may file counteraffidavits. In addition to the affidavits, the trial court may consider the pleadings, depositions and admissions to determine whether any genuine issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law. This procedure allows the trial court to determine if a genuine issue of material fact exists, but not to try the issue. While summary judgment facilitates the prompt disposition of lawsuits, it is a drastic remedy allowed only when the moving party's right to it is clear and free from doubt. In determining the propriety of granting summary judgment, the trial court should construe pleadings, depositions, admissions, exhibits, and affidavits strictly against the movant and liberally in favor of the respondent. Although inferences may be drawn from undisputed facts, an issue should be decided by the trier of fact and summary judgment denied where reasonable persons could draw divergent inferences from the undisputed facts. *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 357-59, 543 N.E.2d 1304, 1307-08.

In this case, the arguments concerning the propriety of the granting the summary judgment turn on the interpretation of the statutes and contracts pertinent to IC's acquisition of a right-of-way as well as the statute regarding abandonment of such right-of-way. The construction of statutes is a question of law. (*Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School District No. 4* (1991), 215 Ill. App. 3d 506, 510-11, 575 N.E.2d 556, 559.) Similarly, when there are no material issues of fact involved, the interpretation of a contract is an issue of law. (*Rymer v. Kendall College* (1978), 64 Ill. App. 3d 355, 359, 380 N.E.2d 1089, 1092.) Therefore, since there is no material issue of fact, summary judgment may be an appropriate disposition in the event that the trial court correctly construed the statutes and contracts involved. Of course, where the construction of statutes and contracts is involved, the reviewing court may make an independent determination. *Dixon v. City of Monticello* (1991), 223 Ill. App. 3d 549, 555, 585 N.E.2d 609, 614; *Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 319-20, 369 N.E.2d 525, 528.

The Federal statute which establishes the public policy and provides for the disposition of abandoned and forfeited railroad grants states, in relevant part:

> "Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad or as sites for railroad structures of any kind, and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment[,] be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures of any kind as aforesaid, except lands within a municipality the title to which, upon forfeiture or abandonment, as herein provided, shall vest in such municipality, and this by virtue of the patent thereto and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever ***." (43 U.S.C. §912 (1988).)

Defendant argues that the land for the subject right-of-way was not directly granted to IC by the United States and, therefore, the above-quoted statute has no application in the case at bar.

In 1850, Congress passed "An Act granting the Right of Way ***" (ch. LXI, 9 Stat. 466 (1850)) (hereinafter Act of 1850), quoted here in relevant part:

> *"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the right of way through the public lands be, and the same is hereby, granted to the State of Illinois for the construction of a railroad from the southern terminus of the Illinois and Michigan Canal to a point at or near the junction of the Ohio and Mississippi Rivers, with a branch of the same to Chicago, on Lake Michigan, and another via the town of Galena in said State, to Dubuque in the State of Iowa, with the right also to take necessary materials of earth, stones, timber, etc., for the construction thereof: *Provided,* That the right of way shall not

exceed one hundred feet on each side of the length thereof, and a copy of the survey of said road and branches, made under the direction of the legislature, shall be forwarded to the proper local land offices respectively, and to the general land office at Washington city, within ninety days after the completion of the same." (Emphasis in original.) (9 Stat. 466 (1850).)

The second section of the Act of 1850 conveyed additional land in aid of construction of the railroad. This land was designated as the even-numbered sections along the road and branches of the railroad for six sections in width on each side. If that land had otherwise been previously conveyed, then authority was granted to substitute lands of the United States most contiguous to the sections designated in the Act of 1850. See 9 Stat. 466 (1850).

According to defendant's argument, the right-of-way through Maroa, which is located in section 2, passed to the State of Illinois which, in turn, conveyed the land in fee simple to Illinois Central by deed executed by Governor August C. French on March 24, 1851. The Governor French deed did purport to convey in "fee simple" all the lands granted by the United States to the State of Illinois for the purpose of securing the construction of the railroad. However, a grantor may convey no greater interest in the real estate than the grantor possesses. (*Frank v. Frank* (1922), 305 Ill. 181, 187, 137 N.E. 151, 154.) Defendant attempts to convince this court that even if the United States had a reversionary interest, the United States has abolished it. (43 U.S.C. §859 (1988).) Section 859 of title 43 of the United States Code provides:

"Where lands have been or may hereafter be granted by any law of Congress to any one of the several States and Territories, and where such law does not convey the fee-simple title of the lands, or require patents to be issued therefor, the list of such lands which have been or may hereafter be certified by the Secretary of the Interior or such officer as he may designate, under the seal of his office, either as originals or copies of the originals or records shall be regarded as conveying the fee simple of all the lands embraced in such lists that are of the character contemplated by such Act of Congress, and intended to be granted thereby, but where lands embraced in such lists are not of the character embraced by such Acts of Congress, and are not intended to be granted thereby, the lists, so far as these lands are concerned, shall be perfectly null and void, and no right, title, claim, or interest shall be conveyed thereby." (43 U.S.C. §859 (1988).)

Defendant contends that, even if the United States retained an interest in the property transferred to Illinois in 1850, section 859 creates a fee simple title in Illinois, and therefore in IC. Defendant's argument cites no authority indicating section 859 applies to the situation before this court. Nor has IC made a part of this record any document or "list" which indicates that the subject land is of the type intended to be covered by section 859.

Before proceeding to a discussion of cases interpreting and applying section 912, the facts underlying the acquisition of the property located in section 11 need to be addressed. Section 11 was not conveyed to Illinois by the Act of 1850. Instead, section 11 was purchased by John C. Dodge and subsequently assigned to David A. Neal, which assignment was recorded in the General Land Office of the United States in November 1852. As a result, the United States gave and granted all rights, privileges, immunities, and appurtenances of whatsoever nature in section 11 to Neal and his heirs and assigns forever. According to IC, on April 26, 1855, Neal dedicated to IC a 200-foot right-of-way in section 11. However, neither party has submitted any document which demonstrates whether Dodge acquired section 11 before or after the Act of 1850. Maroa argues that if Dodge acquired it after the Act of 1850, he took subject to the right-of-way and the plat filed in 1855 by Neal merely recognizes the existence of the right-of-way.

The year of historical significance for understanding the nature of the interests granted to railroads from the United States is 1871. Before 1871, railroads received a limited fee with a right of reverter. After 1871, railroads were granted a lesser interest in property referred to as an exclusive use easement. (See *Vieux v. East Bay Regional Park District* (9th Cir. 1990), 906 F.2d 1330, 1332-33 (citing *United States v. Union Pacific R.R. Co.* (1957), 353 U.S. 112, 119, 1 L. Ed. 2d 693, 698, 77 S. Ct. 685, 689; *Great Northern Ry. Co. v. United States* (1942), 315 U.S. 262, 273-76, 86 L. Ed. 836, 842-43, 62 S. Ct. 529, 533-35), *cert. denied* (1990), 498 U.S. 967, 112 L. Ed. 2d 414, 111 S. Ct. 430.) Although section 912 was enacted in 1922 (see 43 U.S.C. §912 (1988)), the statute applies regardless of whether the railroad has a limited fee with right of reverter or an exclusive easement. (*Vieux*, 906 F.2d at 1335.) Section 912 was passed "as part of the Public Lands Act to ensure that railroad rights of way would continue to be used for public transportation purposes." (*Vieux*, 906 F.2d at 1335.) (The issue in *Vieux* was whether an "abandonment" actually occurred—an issue not raised here.)

■ The Federal courts have already determined that the grant to IC in 1850 is a limited fee subject to an implied condition of reverter if the right-of-way ceased to be used or retained for the purpose for which it was granted. (*United States v. Illinois Cent. R. Co.* (E.D. Ill. 1949), 89 F. Supp. 17, 23.) This conclusion was approved in a *per curiam* decision of the United States Court of Appeals for the Seventh Circuit. (*United States v. Illinois Cent. R. Co.* (7th Cir. 1951), 187 F.2d 374, 375.) Curiously, a half century later, IC asks a State court to rule that two Federal courts misconstrued a Federal statute. Unfortunately for IC, the United States Supreme Court has also indicated that it did not acquire an absolute fee in the railroad right-of-way. *Illinois Central R.R. Co. v. Illinois* (1892), 146 U.S. 387, 444, 36 L. Ed. 1018, 1039, 13 S. Ct. 110, 115.

IC's reply brief attempts to dissect the district court decision in *Illinois Cent.* by reference to two decisions cited therein. *Northern Pacific Ry. Co. v. Townsend* (1903), 190 U.S. 267, 271, 47 L. Ed. 1044, 1047, 23 S. Ct. 671, 672, held that a grant to the Northern Pacific Railroad was of a limited fee with implied condition of reverter. IC points out that the difference between the Act of Congress in *Northern Pacific* and the Act of 1850 is that the grant to the Northern Pacific was directly to the railroad. However, a fair reading of the two statutes suggests the reason for this difference. The lands granted to the Northern Pacific, to create a railroad from Lake Superior to Puget Sound, were located within the territories of the United States. The State of Minnesota having given consent, the company was required to obtain consent from any other States through which a portion of its line might pass. (*Northern Pacific*, 190 U.S. at 268, 47 L. Ed. at 1045, 23 S. Ct. at 671.) The Act of 1850 involved public lands located in the then existing States of Illinois, Mississippi, and Alabama. Each State was to administer the distribution of public lands within its territory. In some respects it could be said the United States was making the State of Illinois its agent or "middleman" for the purpose of creating the railroad in 1850. Furthermore, IC's predecessor corporation did not even exist in 1850. In the event that the railroad could not be created, the land was to revert back to the United States. As the historical discussion in IC's brief discloses, there was great difficulty in getting this railroad started and perhaps State involvement was considered necessary in this instance, whereas in later instances, when the profitability of railroads had been demonstrated, it was not.

IC also attacks the use of *Great Northern Ry. Co. v. United States* (1942), 315 U.S. 262, 86 L. Ed. 836, 62 S. Ct. 529, in the dis-

trict court's *Illinois Cent.* decision. While *Great Northern* did not discuss the Act of 1850, the district court did not rely on that case in deciding that Illinois Central held a limited fee with right of reverter. Rather, the district court specifically stated that *Northern Pacific* is the authority which requires the limited fee holding. *Illinois Cent.*, 89 F. Supp. at 23.

IC also contends that a historical analysis suggests that IC holds title in fee simple. The history of the "checkerboard" grants for creation of railroad rights-of-way is recounted in *Leo Sheep Co. v. United States* (1979), 440 U.S. 668, 669-77, 59 L. Ed. 2d 677, 680-85, 99 S. Ct. 1403, 1405-09, including reference to the Act of 1850. In addition, the Illinois Supreme Court has recited the history of the creation of the Illinois Central Railroad in *State v. Illinois Central R.R. Co.* (1910), 246 Ill. 188, 195-201, 92 N.E. 814, 820-22.

In construing a statute, the courts may consider the history of the times when it was enacted in order to ascertain the reason for, as well as the meaning of, a particular provision. (*Leo Sheep Co.*, 440 U.S. at 669, 59 L. Ed. 2d at 680, 99 S. Ct. at 1405.) However, courts are not at liberty to consider the views of individual members of Congress in debate and the motives which influenced them to vote for or against the passage of the provision. (*United States v. Union Pacific R.R. Co.* (1875), 91 U.S. 72, 79, 23 L. Ed. 224, 228.) Although the history related by IC in its brief, as taken from these authorities and others, demonstrates a strong desire to create a north-south railroad through Illinois and the initial inability to get the job accomplished, the history does not demonstrate that there was an intent on the part of Congress to grant a fee simple absolute instead of a limited fee with right of reverter by reason of the Act of 1850. The language of the Act of 1850 clearly evidences an intent on the part of Congress to convey public land for a right-of-way for the construction and operation of a railroad and for no other purpose. Therefore, we, too, construe the Act of 1850 as conveying to Illinois a limited fee with right of reverter, and Illinois could not create a greater interest in IC's predecessor.

IC relies on *Illinois Cent. R. Co. v. Chicago, B. & N. R. Co.* (N.D. Ill. 1886), 26 F. 477, for the proposition that the Act of 1850 conveyed a fee simple absolute in the State of Illinois. Interestingly, the position of IC's predecessor in that case was contrary to IC's present argument. Chicago, Burlington & Northern (CBN) commenced a State court proceeding to condemn part of the Illinois Central right-of-way, and Illinois Central sought to enjoin the action in Federal court. CBN

then moved to dismiss the Federal court proceeding for want of jurisdiction. In discussing the Act of 1850, the court stated:

"The grant was made for the purpose, in the main, of encouraging settlement, and thus developing the resources of the state and promoting the welfare of the people. It was a grant by the United States to the state on the faith that the latter, as a sovereign, would see that the conditions of the grant were complied with. It was not the intention of congress to provide for the building of lines of railroad within the state of Illinois which should be perpetually maintained for the benefit of the United States.

It is insisted by counsel for the Illinois Central Company, in support of the jurisdiction of the court, that the act of congress became a substantial part of the company's charter, and that the company became directly bound to the United States to perform the conditions of the congressional grant; that the company took the land granted for right of way charged with a use or public trust; and that the company holds it protected against the state's right of eminent domain. I do not think this position is tenable. The United States has parted absolutely with its title to these lands. It has no more interest in them than it has in any other land which it has disposed of. Lands owned by the United States within a state, and not held for a public purpose, are subject to the state's right of eminent domain and taxation, the same as lands owned and held by individuals. *** The United States does not own or hold the right of way in question in any sense, and it certainly has no such interest in the right of way as denies to the state the right to take it for necessary public uses." (*Chicago, B. & N. R. Co.*, 26 F. at 478.)

The issue in *Chicago, B. & N. R. Co.* was whether there was sufficient Federal interest in the disputed property to invoke Federal jurisdiction. As between two railroads, the United States would not have an interest in determining which operated on and along the right-of-way. A railroad could not, however, transfer the land so granted or lose it by adverse possession to persons whose ownership would be inconsistent with the purpose for which the land was granted. (*Northern Pacific*, 190 U.S. at 271-73, 47 L. Ed. at 1047, 23 S. Ct. at 672-73.) It was gratuitous and unnecessary for the court to suggest that the United States had parted absolutely with title. In addition, it was an incorrect statement as demonstrated by the Seventh Circuit's *per curiam* affirmance of the district court's decision in *Illi-*

*nois Cent.* (187 F.2d at 375) and the United States Supreme Court's reference in *Illinois Central R.R. Co.* (146 U.S. at 444, 36 L. Ed. at 1039, 13 S. Ct. at 115).

■ There is no distinction for our purposes between the right-of-way passing through sections 2 and 11. IC's predecessor was granted one continuous line, not fragments. To the extent that the United States has a right of reverter, it has a right of reverter to all of it. In *H.A. & L.D. Holland Co. v. Northern Pac. Ry. Co.* (9th Cir. 1914), 214 F. 920, the court considered the title acquired under the Northern Pacific Land Grant Act of July 2, 1864 (13 Stat. 365), which granted the odd-numbered sections along the right-of-way in aid of construction. The court held that merely because the part of the right-of-way in question was located in an odd-numbered section did not mean that the railroad took absolute title because Congress intended to grant a continuous line and did not contemplate in the case of reversion that only disconnected fragments would be returned. (*H.A. & L.D. Holland Co.*, 214 F. at 924.) The court rejected the argument that when the railroad acquired the alternate sections of land through which its right-of-way passed, the title merged, stating the merger doctrine is subordinate to the legislative intent of the granting act. (*H.A. & L.D. Holland Co.*, 214 F. at 925.) This means section 912 of title 43 of the United States Code applies regardless of how the railroad acquires title to the section through which the right-of-way passes.

In *City of Buckley v. Burlington Northern R.R. Corp.* (1986), 106 Wash. 2d 581, 723 P.2d 434, in a proceeding by a municipality to quiet title to an abandoned right-of-way pursuant to section 912, summary judgment in favor of the railroad was reversed. The court noted that section 912 was enacted in response to *Northern Pacific* and *H.A. & L.D. Holland Co.* and for the purpose of disposing of the Federal government's reversionary interests in the rights-of-way. *City of Buckley*, 206 Wash. 2d at 583, 723 P.2d at 436.

The continuity of right-of-way theory as applied to the case at bar requires that the entire right-of-way, including that located in section 11, must be considered as a whole. In this case, under the Act of 1850, the even-numbered sections were granted on either side of the right-of-way in aid of construction of the railroad. But nothing in the Act of 1850 requires that the right-of-way pass only through even-numbered sections. The right-of-way itself was effective from the date of the Act of 1850. (*Northern Pacific Ry. Co. v. Hasse* (1905), 197 U.S. 9, 10, 49 L. Ed. 642, 643, 25 S. Ct. 305, 305.) The rights of persons who acquired public lands after the passage of the Act of 1850 were subject to the right-of-way of the railroad. *Bybee v. Oregon &*

*California R.R. Co.* (1891), 139 U.S. 663, 679-80, 35 L. Ed. 305, 309, 11 S. Ct. 641, 644.

Unfortunately, we do not know precisely when Dodge purchased the property. Both parties resort to histories which are not part of the record. Maroa specifically refers to a history which details the relationship of Dodge and Neal to IC's predecessor. Maroa has not cited authority that these matters which are not part of the record may be considered as facts on a motion for summary judgment.

Summary judgment is not precluded, however, merely because the parties have not established the precise date of Dodge's acquisition of section 11. IC argues its predecessor obtained the right-of-way from Neal, Dodge's assignee, but the record does not contain a copy of a deed or grant of easement from Neal to IC's predecessor. Instead, IC argues a plat which was made part of the record is evidence Neal dedicated land for the right-of-way through section 11.

Maroa has met its burden of proof. The documents on file establish there was a Federal grant of public lands for the purpose of creating a railroad and that the portion of the right-of-way through Maroa has been abandoned. Contrary to IC's contention, Maroa does not have to prove the grant was made directly to the railroad company from the United States. Section 912 does not impose such a requirement. Therefore, the involvement of the State of Illinois in this process of establishing the railroad right-of-way is no bar to this action. As a partial defense, however, IC attempts to raise an 1855 "dedication" of the right-of-way through section 11 by Neal to establish that that portion of the right-of-way was not created by the Act of 1850. The party proponent of a dedication has the burden of proof with regard to the valid establishment of the dedication. (See *H.A. Hillmer Co. v. Behr* (1914), 264 Ill. 568, 577, 106 N.E. 481, 485; 16 Ill. L. & Prac. *Dedication* §41 (1971).) One of the first elements which must be established is that the person purporting to make a dedication is actually the owner of the subject property. In order to prove that Neal owned the land over which the right-of-way through section 11 passed, IC had to prove that Neal's predecessor, Dodge, acquired section 11 prior to the enactment of the Act of 1850. This IC failed to do. The dedication language in the plat does not create a presumption that Dodge owned the land prior to the Act of 1850. There is also the question of whether a "dedication" to a private railroad company is a dedication for public use, but it is unnecessary to consider that question in this case.

In summary, this case deals only with the right-of-way granted by the Act of 1850, and does not in any way affect the conveyance of

514

surrounding land granted in aid of construction of the railroad which is unaffected by section 912. Although a railroad right-of-way may be owned in fee simple absolute (*Urbaitis v. Commonwealth Edison* (1991), 143 Ill. 2d 458, 465-73, 575 N.E.2d 548, 551-54), the Act of 1850 granted a limited fee with a right of reverter. There is no evidence that Dodge, Neal, or any other person or entity owned any of the subject property prior to the enactment of 1850. Section 912 of title 43 of the United States Code provides that, on abandonment of that portion of the right-of-way passing through Maroa, all rights, title, and interest in that portion of the right-of-way are to pass to Maroa. There is no evidence that the subject right-of-way is on any list created by the Secretary of the Interior of the United States for the purposes of section 859 of title 43 of the United States Code. Therefore, summary judgment was properly entered in favor of Maroa by the circuit court of Macon County, and that judgment is hereby affirmed.

Affirmed.

COOK and LUND, JJ., concur.