NO. 4-00-0369

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

KENNETH W. SMITH; PATRICIA ANN SMITH;

HELEN GILLILAND HUGHES, Trustee of the HELEN GILLILAND HUGHES Trust, dated November 10, 1993; and ANN I. GILLILAND,

Plaintiffs-Appellants,

          v.

LAVERNE MALONE; SHARON MALONE; WILLIAM C. EDWARDS, Trustee Under Declaration of Trust of WILLIAM C. EDWARDS, dated January 25, 1994; and BERTHA A. EDWARDS, Trustee Under Declaration of Trust of BERTHA A. EDWARDS, dated January 25, 1994,

Defendants-Appellees.

)

)

)

)

)

)))))))))

)

Appeal from

Circuit Court of

De Witt County

No. 94MR16

Honorable

John P. Shonkwiler,

Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

In July 1994, plaintiffs, Kenneth W. Smith, Patricia Ann Smith, Helen Gilliland Hughes, as trustee of the Helen Gilliland Hughes trust dated November 10, 1993, and Ann Gilliland,
 filed a complaint against defendants, Laverne Malone, Sharon Malone, William C. Edwards, as trustee under declaration of trust of William C. Edwards dated January 25, 1994, and Bertha A. Edwards, as trustee under declaration of trust of Bertha A. Edwards dated January 25, 1994,
 for ejectment and quiet title regarding a strip of former Illinois Central Railroad (Railroad) right-of-way property.  In March 2000, the trial court granted defendants' motion to dismiss plaintiffs' complaint without leave to file an amended complaint.  Plaintiffs appeal, arguing the trial court erred in interpreting section 912 of Title 43 of the United States Code (43 U.S.C. §912 (1994)) as requiring plaintiffs to allege a chain of title to the right-of-way and not giving them title as adjacent landowners.  We affirm. 

I. BACKGROUND

A. Procedural History

Plaintiffs' original complaint for ejectment and quiet title alleged (1) they owned in fee simple certain property, an abandoned railroad right-of-way in De Witt County, running through section 35 of township 19 north; (2) in February 1988, the Railroad purported to convey portions of the right-of-way to William C. Edwards; (3) thereafter, Edwards purported to convey his interest to the other defendants; (4) plaintiffs entered into possession of the right-of-way under claim of title and began to farm the property; and (5) defendants claimed title to the right-of-way and interfered with plaintiffs' possession of the property.  In September 1994, plaintiffs filed a motion to amend their complaint to seek in the alternative declaratory judgment, asking the trial court to find the Railroad abandoned its interest in the right-of-way and plaintiffs are the owners of the right-of-way.  In October 1994, plaintiffs filed a motion to file their second-amended complaint to additionally allege they "are successors in title and interest to whom title of the United States has been granted, conveying or purporting to convey the whole of the legal subdivision traversed or occupied by the [right-of-way]."

In August 1999, defendants filed a motion to dismiss pursuant to section 2-615(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(a) (West 1998)).  In March 2000, the trial court granted defendants' motion to dismiss, stating:

"The court believes that in [plaintiffs'] complaint they must rely solely on their color of title.  The court therefore finds as a matter of law [s]ection 912 does not provide that an abandoned railroad right-of-way reverts automatically to the adjacent land owner of the right-of-way."

The trial court also denied plaintiffs leave to amend their complaint.  After the trial court's ruling, plaintiffs' attorney asked for clarification:

"MS. HEINZ:  It was my understanding that the defendants were arguing that we never alleged that we could show that we were successor[s] in interest in the title of the property *** but that is an allegation in the second[-]amended complaint.

THE COURT:  Counsel, the court understands that the plaintiffs allege that their right to title is that they are adjacent land owners.

MS. HEINZ:  Or successors in interest.  We say they are the same thing."

In April 2000, plaintiffs filed a notice of appeal without filing a motion for reconsideration.

B. History of Disputed Right-of-Way

On September 20, 1850, Congress granted the State of Illinois a 200-foot-wide right-of-way through public lands in Illinois to construct a railroad from Cairo to La Salle, with a branch to Chicago and another to Dubuque.  Act of September 20, 1850, 9 Stat. 466 (1850); 
State v. Illinois Central R.R. Co.
, 246 Ill. 188, 197, 92 N.E. 814, 820 (1910).  The United States also granted Illinois every alternate section of land for six miles in width on each side of the right-of-way to be sold to finance the construction of the Illinois railroad lines.  Act of September 20, 1850, 9 Stat. 466 (1850); 
Illinois Central
, 246 Ill. at 197, 92 N.E. at 820.  The parcels of land granted to Illinois under this "checkerboard" land-grant scheme were designated with even numbers.  Act of September 20, 1850, 9 Stat. 466 (1850).  The right-of-way in dispute crosses the section of land numbered 35.

In February 1851, the State of Illinois incorporated the Railroad to undertake the railroad expansion through Illinois.  
Illinois Central
, 246 Ill. at 198, 92 N.E. at 820.  In March 1851, Illinois Governor Augustus C. French deeded the land granted to Illinois by the United States to the Railroad, allowing the Railroad to construct the Illinois portion of the Chicago, Illinois, to Mobile, Alabama, cross-country railroad system.

The record does not reflect the complete chain of title to this land, including any United States patents conveying title to this land.  In November 1993, Hughes, as trustee of the Helen Gilliland Hughes trust dated November 10, 1993, obtained a warranty deed conveying an undivided one-half interest in "that part of the [west] 1/2 of the [northwest] 1/4 of [section] 35, [township] 19 [north], [range] 2 [east] of the [third principal meridian
], containing 29 acres, more or less, and lying [west] of the former right-of-way of the [Railroad]."  Gilliland owned the other undivided one-half interest in this parcel.  In March 1987, the Smiths obtained by warranty deed the following property:

"Beginning at an iron pin on the [n]orth line of the [w]est 1/2 of [s]ection 35, [t]ownship 19 [n]orth, [r]ange 2 [e]ast of the [third principal meridian], a distance of 1[,]008.72 feet [w]esterly of the [n]ortheast corner thereof; thence [south] *** a distance of 4[,]594.75 feet to an iron pin on the [n]orth line of the [s]outh 31-acre exception lying [e]ast of the [Railroad] right[-]of[-]way line in the [w]est 1/2 of said [s]ection 35; thence *** [w]est, on the [n]orth line of the [s]outh 31 acres, 932.49 feet to an iron pin on the [e]ast right[-]of[-]way line of the [Railroad]; thence [n]orth on the said [e]ast right[-]of[-]way line a distance of 4[,]596.67 feet to an iron pin on the [n]orth line of the [w]est 1/2 of said [s]ection 35; thence *** [e]ast on the [n]orth line of the [w]est 1/2 of said [s]ection 35 a distance of 1[,]008.15 feet to the point of beginning, containing 102.361 acres more or less."

In February 1988, the Railroad quitclaimed all its right, title, and interest to the original 200-foot-wide railroad right-of-way in section 35 to William C. Edwards.  Between 1988 and 1994, Edwards engaged in various conveyances regarding this right-of-way.

II. ANALYSIS

Plaintiffs claim the conveyances to and among the defendants are void.  
They assert the Railroad could not have conveyed any interest to Edwards because the Railroad's interest in the right-of-way, a limited fee subject to an implied condition of reverter, terminated when it ceased to use or retain the right-of-way for the purpose for which the United States granted it.  Plaintiffs assert they own the right-of-way by operation of section 912
.

Defendants' motion to dismiss cited to section 2-619 of the Code (735 ILCS 5/2-619 (West 1998)).  Because the motion asked the trial court to dismiss plaintiffs' complaint because it failed to state a cause of action, we treat it as a motion to dismiss pursuant to section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West 1998)).  

When faced with a motion to dismiss, the court must accept as true all well-pleaded factual allegations and disregard mere conclusions of law.  
Coles-Moultrie Electric Cooperative v. City of Sullivan
, 304 Ill. App. 3d 153, 157, 709 N.E.2d 249, 251 (1999).  We review 
de
 
novo
 a trial court's dismissal for failure to state a cause of action.  
Young v. Forgas
, 308 Ill. App. 3d 553, 566, 720 N.E.2d 360, 369 (1999).

A. Requirements for Quiet Title Action

On appeal, plaintiffs argue the trial court erred by dismissing their complaint because they alleged sufficient facts to plead a cause of action as adjacent owners to the right-of-way.  "[A] fundamental requirement in an action to quiet title *** [is] the plaintiff must recover on the strength of his own title, although it is not required that a perfect title be established."  
Reynolds v. Burns
, 20 Ill. 2d 179, 193, 170 N.E.2d 122, 130 (1960).  To prevail in a quiet title action, a plaintiff must establish title superior to the defendant's title.  
Wilder v. Finnegan
, 267 Ill. App. 3d 422, 425, 642 N.E.2d 496, 499 (1994).  Moreover, where a plaintiff has no title in himself, he cannot maintain an action for quiet title.  
Lakeview Trust & Savings Bank v. Estrada
, 134 Ill. App. 3d 792, 812, 480 N.E.2d 1312, 1327 (1985).

B. Requirements for Ejectment

Section 6-104 of the Code (735 ILCS 5/6-104 (West 1998)) provides:

"No person shall recover in ejectment unless he or she has, at the time of commencing the action, a valid subsisting interest in the premises claimed, and a right to recover the same, or to recover the possession thereof, or of some share, interest[,] or portion thereof, to be proved and established at the trial."

A plaintiff in ejectment also must recover on the strength of his own title rather than the weakness of his adversary's title.  
Bulatovic v. Dobritchanin
, 252 Ill. App. 3d 122, 128, 625 N.E.2d 26, 31 (1993)
.

C. Interpretation of Section 912

Plaintiffs contend the trial court erred in interpreting section 912.  They suggest they obtained the United States' reversionary interest in the right-of-way merely by virtue of their adjacency to a single side of the right-of-way.  We disagree.

Section 912 states, after a railroad company abandons a right-of-way granted by the United States:

"[A]ll right, title, interest, and estate of the United States in said lands shall *** be transferred to and vested in any person, firm or corporation, assigns, or 
successor
 
in
 
title
 
and
 
interest
 
to
 
whom
 
or
 
to
 
which
 
title
 
of
 
the
 
United
 
States
 
may
 
have
 
been
 
or
 
may
 
be
 
granted
, 
conveying
 
or
 
purporting
 
to
 
convey
 
the
 
whole
 
of
 
the
 
legal
 
subdivision
 or subdivisions 
traversed
 or occupied 
by
 
such
 
railroad
 ***."  (Emphasis added.)  43 U.S.C. §912 (1994).

In 
Marlow v. Malone
, 315 Ill. App. 3d 807, 813, 734 N.E.2d 195, 200-01 (2000), this court interpreted the plain language of section 912
 to require a plaintiff in a quiet title action to demonstrate title to the land underlying the right-of-way, unless the plaintiff is a municipality seeking to assert ownership to land within its jurisdiction.  See 
City of Maroa v. Illinois Central R.R.
, 229 Ill. App. 3d 503, 514, 592 N.E.2d 660, 667 (1992).

   D. Title to the Disputed Right-of-Way

Applying the interpretation of section 912 we adopted in 
Marlow
, we examine plaintiffs' deeds to determine whether plaintiffs can establish title to the land underlying the right-of-way.  We conclude plaintiffs cannot do so.

Hughes' deed includes only "that part of *** [section] 35 *** 
lying
 [
west
] of the former right-of-way of the [Railroad]."  (Emphasis added.)  The Smiths' deed 
describes the property by tracing "[w]est, on the [n]orth line of the [s]outh 31 acres, 932.49 feet to an iron pin on the 
[e]ast
 
right
[-]
of

[-]
way
 
line
 of the [Railroad]; thence [n]orth on the said 
[e]ast
 
right
[-]
of
[-]
way
 
line
."  (Emphasis added.)
  Thus, the Smiths' deed describes property lying east of the right-of-way but not including the land underlying the right-of-way.

Plaintiffs maintain our holding in 
Marlow
 requiring plaintiffs to demonstrate title to the land underlying the right-of-way was incorrect because section 912 requires title to the legal subdivision traversed by the right-of-way.  
We disagree.  The language in section 912, "purporting to convey the whole of the legal subdivision" (43 U.S.C. §912 (1994)), merely indicates a purported conveyance of the entire subdivision, without qualification, includes title to the land underlying the right-of-way.  
Marlow
, 315 Ill. App. 3d at 814-15, 734 N.E.2d at 201-02
. 
 In any event, plaintiffs' deeds do not describe any "legal subdivision" "traversed" by the right-of-way because each plaintiff owns property only on a single side of the right-of-way.  See 
Warren v. Van Brunt
, 86 U.S. 646, 652, 22 L. Ed. 219, 222 (1874) (
legal subdivisions of the public lands must contain at least a quarter of a quarter section, or 40 acres, except in the case of fractional sections); Merriam-Webster's Collegiate Dictionary 1257 (10th ed. 1998) ("traverse *** 1:  something that crosses").

Plaintiffs also contend our interpretation of section 912
 in 
Marlow
 renders no one able to establish a chain of title to the disputed right-of-way in this odd-numbered section and 
results in title reverting to the United States when Congress intended to divest itself of its interest.  
We disagree.  Section 912 applies to situations in which the United States granted the right-of-way to a railroad, yet issued a separate patent for the entire subdivision traversed by the right-of-way.  
Marlow
, 315 Ill. App. 3d at 815, 734 N.E.2d at 202
.  Section 912 also applies in situations in which an attempt to convey a fee interest in the entire subdivision, including the land underlying the right-of-way, is technically unsuccessful.  
Marlow
, 315 Ill. App. 3d at 815, 734 N.E.2d at 202
.  
Moreover, the language in section 912, "purporting to convey the whole of the legal subdivision" (43 U.S.C. §912 (1994)), enables a purported conveyance of the entire subdivision, without qualification, to include title to the land underlying the right-of-way.  
Marlow
, 315 Ill. App. 3d at 815, 734 N.E.2d at 202
.  
The owner of a legal subdivision may convey the property, including the interest in the land underlying the right-of-way, in any manner or proportions.  
Marlow
, 315 Ill. App. 3d at 815, 734 N.E.2d at 202
.

Therefore, plaintiffs are not successors in interest to those to whom title of the United States may have been granted, conveying or purporting to convey the whole of the legal subdivision traversed by the right-of-way, because 
their deeds did not include the land underlying the right-of-way.
  Plaintiffs had no title in the land underlying the right-of-way because their deeds excluded the right-of-way.  
Thus, section 912 does not grant them title to the right-of-way as landowners each adjacent to a single side of the right-of-way.
  As a result, their complaint for ejectment and quiet title must fail.  We need not consider whether defendants had title, nor do we need to decide who else might own the right-of-way.  
The trial court properly dismissed plaintiffs' complaint because they did not assert any basis for title other than their erroneous interpretation of section 912.

E. Leave To Amend Complaint

Plaintiffs contend the trial court erred in denying them leave to file their second-amended complaint.  Parties do not have an absolute right to amend pleadings, and the decision whether to permit amendment is addressed to the sound discretion of the trial court.  
Kennedy v. King
, 252 Ill. App. 3d 52, 55, 623 N.E.2d 955, 957 (1993).  A trial court may properly deny a motion to amend pleadings if the proposed amended complaint would be subject to immediate dismissal due to some inherent defect.  
Kennedy
, 252 Ill. App. 3d at 55, 623 N.E.2d at 957
.

Plaintiffs argue their second-amended complaint states a cause of action because it alleges plaintiffs are successors in title and interest to whom title of the United States has been granted, conveying or purporting to convey the whole of the legal subdivision traversed or occupied by the right-of-way.  Although plaintiffs' allegation mirrors the language in section 912, it is an erroneous conclusion of law.  
See 
Coles-Moultrie
, 304 Ill. App. 3d at 157, 709 N.E.2d at 251 (
"[w]hen faced with a motion to dismiss, the court must *** disregard mere conclusions of law").  
As plaintiffs' attorney admitted at the March 2000 hearing, plaintiffs allege to be "successors in interest" merely because they are adjacent landowners.  
Thus, the trial court did not abuse its discretion in denying plaintiffs leave to amend their complaint because their sole claim of title in their second-amended complaint was also supported only by their erroneous interpretation of section 912.  

 
 
 
 III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, P.J., concurs.

MYERSCOUGH, J., specially concurs.

JUSTICE MYERSCOUGH, specially concurring:

I agree with the majority's interpretation and application of section 912 in this case.  I write separately only to emphasize that section 912 operates to grant title to forfeited or abandoned railroad rights-of-way only to those with title regardless of whether the right-of-way traverses an even- or odd-numbered section of land.  Although we have previously found that the plain language of section 912 explicitly requires title to the land underlying the right-of-way (
Marlow
, 315 Ill. App. 3d at 813, 734 N.E.2d at 200-01), the legislative history leading to the enactment of section 912 clearly supports our interpretation and application as well.

In its report to the House of Representatives regarding House Bill 244, later passed as section 912, the Committee of Public Land and Surveys wrote:

"The object of this bill is to provide for disposition of lands embraced in forfeited or abandoned railroad rights[-]of

[-]way on what was originally public lands.  In some cases[,] a right[-]of[-] way was granted by the [g]overnment and later forfeited, while in other cases change in the location of the railroad resulted in the abandonment of the old right[-]of[-]way.  The act of March 3, 1875, under which most of the rights[-]of[-]way over public lands have been granted contains a provision for forfeiture of the grant for failure to construct the railroad within a specified time succeeding the date of the grant.  Under the decision of the courts[,] railroad companies receiving such grants take a qualified fee with an implied condition of reverter in the event the companies cease to use the lands for the purpose for which they were granted.  Upon abandonment or forfeiture, therefore, of any portions of such right[-]of[-]way the land reverts to and becomes the property of the United States.

It is, however, a fact that in making conveyances of subdivisions traversed by such rights[-]of[-]way the United States issues patents for the full area of the tracts or legal subdivisions, making no diminution by reason of the prior grant of the right[-]   of[-]way.

It seemed to the committee that such abandoned or forfeited strips are of little or no value to the [g]overnment and that in case of lands in the rural communities they ought[,] in justice[,] to become the property of the person to whom the whole of the legal subdivision had been granted or his successor in interest.  Granting such relief in reality gives him only the land covered by the original patent."  H.R. Rep. No. 67-217, at 1-2 (1921).

See also S. Rep. No. 67-388, at 2 (1922) (letter from E.C. Finney, Acting Secretary) (recommending to the Senate that House Bill 244 should be passed and adopting the explanation in the above-quoted House Report).

Therefore, based upon the plain language of section 912 and the legislative history, section 912 operates in the following manner regardless of whether the right-of-way traverses an even- or odd-numbered section of land.  As in the present case, the United States either grants or issues a patent for an entire tract or subdivision of land to a person or company (hereinafter patentee).  See H.R. Rep. No. 67-217, at 1-2 (1921).  By virtue of that conveyance, the patentee owns the entire tract or subdivision covered by the patent or conveyance without qualification.  The United States, however, also grants a right-of-way for railroad passage across that tract or subdivision.  According to the United States Supreme Court, the United States' grants of these railroad rights-of-way actually only grant the railroad a qualified fee with implied condition of reverter.  
Northern Pacific Ry. Co. v. Townsend
, 190 U.S. 267, 271, 47 L. Ed. 1044, 1047, 23 S. Ct. 671, 672 (1903).  Accordingly, whenever a railroad forfeits or abandons a right-of-way, the land underlying the right-of-way reverts to the United States government.  See H.R. Rep. No. 67-217, at 1-2 (1921).

Because these forfeited or abandoned strips of land were of little or no value to the United States (see H.R. Rep. No. 67-217, at 2 (1921)), Congress enacted section 912 to divest the United States of these railroad rights-of-way.  Essentially, section 912 works much like the doctrine of after-acquired title.  The doctrine of after-acquired title generally provides that when one conveys real estate by a deed purporting to convey the same in fee simple, any legal estate that the grantor acquires after the sale or conveyance passes to the grantee or the grantee's successor in interest.  23 Am. Jur. 2d 
Deeds
 §347 (1983); see also 
Tomkins State Bank v. Niles
, 127 Ill. 2d 209, 217, 537 N.E.2d 274, 278 (1989) (stating that the Illinois statute regarding this issue provides that "if a person sells or conveys to another an estate in land which the vendor does not possess, but then after the sale or conveyance, the vendor does 'become possessed of and confirmed in the legal estate to the land or real estate so sold or conveyed [(Ill. Rev. Stat. 1983, ch. 30, par. 6)],' the vendor holds the subsequently acquired estate in trust for the person or entity to whom the original conveyance was made").

Therefore, upon forfeiture or abandonment, the railroad right-of-way reverts to the United States government.  By operation of section 912, the United States' reverted interest then vests in the patentee who received interest in the entire tract or subdivision or their successors in interest.

Often, however, railroads abandon rights-of-way long after the original patent or grant.  By the time the railroad abandons the right-of-way, the patentee may have divided and conveyed some or all of the tract or subdivision.  If in dividing or conveying portions of the subdivision the patentee has conveyed or, more accurately, purported to convey an interest in the land underlying the right-of-way, any after-acquired interest the patentee receives by operation of section 912 will be transferred to grantees or the grantee's successor in interest who received a deed for the patentee's interest in the land underlying the right-of-way.  If the patentee only conveyed the land on either side of the right-of-way but never conveyed the land underlying the right-of-way, the land underlying the right-of-way remains the property of the original patentee or his heirs.

Likewise, if hypothetically the United States never issued a patent or conveyed the land underlying the right-of-way to anyone, then when the railroad company abandons the right-of-way and the land underlying the right-of-way reverts to the United States, the United States remains possessed of the fee simple interest in that land.  In such a case, section 912 would not apply.

Therefore, persons with title only to the land bordering or adjacent to the right-of-way may not claim the land underlying the right-of-way merely by virtue of their adjacency. Persons seeking to claim interest in an abandoned railroad right-of-way by operation of section 912 must have title to the land underlying the right-of-way.  Title must emanate from the original interest of the United States, either through a patent or other similar grant such as a purported conveyance from the United States to a railroad company and thereafter from the railroad company to individual persons or corporations
.  
Marlow
, 315 Ill. App. 3d at 813, 734 N.E.2d at 200-01.

Moreover, these principles are applicable both to situations in which the entire section of land was granted to the railroad company to subsidize the construction of the railroad (see 
Marlow
, 315 Ill. App. 3d at 815, 734 N.E.2d at 202) and to situations, as in the present case, in which the United States apparently never granted the entire section to the railroad company.  In 
Marlow
, the right-of-way crossed an even-numbered section that the United States had granted to the railroad to sell and subsidize the railway construction.  
Marlow
, 315 Ill. App. 3d at 815, 734 N.E.2d at 202.  In the present case, however, the disputed right-of-way crosses an odd-numbered section of land.  Therefore, because the United States did not historically grant the odd-numbered sections to the railroad companies (Act of September 20, 1850, 9 Stat. 466 (1850); 
Illinois Central
, 246 Ill. at 197, 92 N.E. at 820) and the record fails to indicate the complete chain of title, we must assume that the United States did not grant this particular section to the railroad as it had with the section in 
Marlow
.  This fact, however, does not change the underlying analysis regarding ownership of the abandoned right-of-way or application of section 912.  I, therefore, agree that no logical reasons exist for applying different standards to these two situations.

For the foregoing reasons, I specially concur.