THE CHICAGO, SANTA FE AND CALIFORNIA RAILWAY COMPANY

*v.*

HUGH WARD.

*Filed at Ottawa November 15, 1888—Re-filed May 16, 1889.*

1. EMINENT DOMAIN—*waiver of trial by jury—as to preliminary facts.* Where the petitioner, in a proceeding to condemn land for railroad purposes, makes no objection below to the action of the court in hearing evidence in reference to the title and rights of the defendant in the premises sought to be taken, and finding those rights without a jury, but participates in such hearing and offers evidence, it will be estopped from making the objection in this court that the preliminary facts were not found by a jury. In a civil case it is always competent for the parties to waive a jury and submit their case, or any part of it, to the court for decision.

2. SAME—*general exception—to what it relates.* On petition to condemn, before the case was submitted to the jury, the record showed that the parties appeared, and each introduced preliminary proof to the court as to the extent of the defendant's interest and right, without objection or protest, and made suggestions to the court, and that the court found such right and interest of the defendant in the premises, after which the record recited, "to which ruling and order of the court the petitioner now here excepts:" *Held,* that the exception had reference to the conclusion reached by the court after hearing the preliminary proofs, and not to the fact that the court heard and passed upon such proofs without a jury.

3. SAME—*measure of damages—rights appurtenant as an element.* On a proceeding to condemn the south half of a lot, to which was annexed,

as appurtenances, a right of way over the other half of the lot, a coal office and scales also upon such other half, and a side-track in an adjacent alley, such appurtenances are property interests connected with the land sought, and there is no error in instructing the jury to take such rights, privileges and appurtenances into consideration in determining the fair market or cash value of the south half of the lot, as they are proper elements of value to the property to which they belong.

4. Where a lot sought to be taken for a public use is used for a coal yard, in connection with its appurtenances, which are, a right of way over an adjoining lot to a public street, a right to the use of a coal office and a pair of scales on the latter lot, and of a side-track from a railroad, and the lot sought is of but little value without such rights and privileges in the other lot, the jury, in estimating the compensation to the lot sought, should consider its value in connection with its appurtenances.

5. A acquired title to the south half of a lot, to which was appurtenant a right of way over the north half, and a coal office and scales on the north half of the lot, and also a switch-track along the lot. A railway company, by deed, acquired the title to the north half of the lot, and sought to condemn the south half of such lot. A, the owner thereof, by cross-petition, claimed damages for the value of his lot as enhanced by these appurtenances, or for the value of the appurtenances. The railway company never offered to allow A to remove the coal office and scales from the north half of the lot, and there was no evidence tending to prove that the property had any value to A if left remaining thereon, or that their removal was practicable, but on the contrary, the court included the coal office and scales in its judgment of condemnation: *Held,* that A, under the facts, was entitled to recover, as compensation, the value of such property as it stood at the time.

6. Same—*measure of damages—elements to be considered, generally.* In a proceeding to condemn land for public use, the owner is entitled to just compensation for any property taken or injured. Such compensation is to be estimated according to the existing condition of the property at the time. He is not required to remove buildings or other things attached to the realty, in order to lessen his damages.

7. Appurtenance—*what so regarded—right of way, coal office—weighing scales—railroad side-track.* The owner of a lot conveyed the north half thereof, reciting in the deed that he "expressly reserves from this conveyance the right of way over and across the north half of said lot to the south half thereof, and back again, for teams and men," and afterward conveyed the south half, "with all the hereditaments and appurtenances thereunto belonging or in any wise appertaining :" *Held,* that the right of way over the north half of the lot was appurtenant to the south half, and passed under the conveyance of the latter.

8. The owner of a lot, the north end fronting on a public street, conveyed by deed the north half of the lot to A, reserving therein a right

of way over the same to the south half, and also a coal office located on the north end of the lot. The grantor, and A, the grantee, then made an agreement, which was recorded, in which it was recited that A had bought an undivided half of certain scales situated on the north half of the lot, near the coal office, and that a railway company was about to build a side-track along the west side of the lot for the convenience of business on said lot, and it was thereby agreed that each should own, pay for and keep in repair the undivided one-half of the said scales and side-track, and that the scales should be owned and used jointly. A conveyed the north half with the same reservations, and by *mesne* conveyances the title was vested in B, who conveyed to a railway company. While the original owner was in the use and enjoyment of the right of way reserved, he conveyed the south half to O and D, with the appurtenances, and they conveyed to W., all of which deeds were recorded. The agreement in respect to the scales and side-track was assigned by A to his grantee, and passed, by successive assignments, to the subsequent owners of the south half, which assignments were recorded. By the deeds from the original owner and his grantees, the undivided half of the scales was also conveyed to W., and the proof showed that W. and his grantees had used the coal office, right of way and side-track for over twenty years, in connection with the coal business on said lot: *Held*, on a proceeding to condemn the south half of the lot, that the right of way over the north half of the lot, the coal office, and the undivided half of the scales and side-track, were to be regarded as appurtenances to the south half of the lot.

Appeal from the Circuit Court of Will county; the Hon. Dorrance Dibell, Judge, presiding.

Messrs. Haley & O'Donnell, and Messrs. Williams & Thompson, for the appellant:

The finding of facts by the court was contrary to the evidence, and the court had no power to pass upon issues of fact, but should have submitted them to the jury.

If the coal office on the north half of the lot was personal property, it could not be appurtenant to the other half of the lot. *Bliss* v. *Kennedy*, 43 Ill. 67 ; *Scheidt* v. *Belz*, 4 Bradw. 431.

By instructions Nos. 1 and 2, the court took the facts from the jury, and by the last, directed the jury not only to find the damages and just compensation for the property sought and taken, but actually compelled the petitioner to pay for prop-

erty situated upon land not embraced in the petition, the same as if it took it. Rev. Stat. chap. 47, secs. 1, 8; *Dupuis* v. *Railway Co.* 115 Ill. 97; *McCormick* v. *Park Comrs.* 118 id. 655; *Sherman* v. *Dutch,* 16 id. 283; *Dart* v. *Horn,* 20 id. 212; *Chicago* v. *Bixby,* 84 id. 82; *Village of Warren* v. *Wright,* 3 Bradw. 602.

Mr. Benjamin Olin, and Mr. J. S. Reynolds, for the appellee:

It was proper to bring to the attention of the court, by cross-petition, any interest or claim not stated, or not accurately stated, in the original petition. (*Johnson* v. *Railway Co.* 111 Ill. 413; *Johnson* v. *Railway Co.* 116 id. 521.) But as there was no demurrer or objection to the cross-petition in the case at bar, there is no question presented thereon. Appellant's counsel, in their brief, do not refer to the subject.

The court, in condemnation proceedings, is to pass upon preliminary questions before submitting the question of damages or compensation to the jury. *Smith* v. *Railroad Co.* 105 Ill. 518.

The jury, under the statutory oath, are not to pass upon any questions except such as affect the matter of damages or compensation. They have to do alone with values. *Smith* v. *Railroad Co.* 105 Ill. 518.

The submission to the jury of matters of title, and of the question whether lands sought to be condemned are entitled or not to certain easements appurtenant, etc., would create confusion and embarrassment. Such inquiries for the jury are not contemplated in the statutory oath, nor in their report, under the statute.

Again, as both sides voluntarily submitted the questions involved in the preliminary findings, to the court, together with the proofs thereon, and as neither side made any objection, of record or otherwise, to the court passing thereon without the intervention of a jury, this question as to the propriety of the court hearing and determining such preliminary mat-

ters can not be raised here.   It would be a fraud to raise it in this court now, if thereby it would prejudice the rights of the appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a proceeding for condemnation, begun by the appellant company by the filing of its petition in vacation on March 30, 1888, in the Circuit Court of Will County, making the appellee and many other persons defendants, and seeking to condemn a large number of separate pieces of real estate. Among these pieces the petition describes the south half of lot four of H. A. Gardner's subdivision, etc., in Joliet, Will county, and alleges, that the appellee, Hugh Ward, is the owner thereof.   Ward moved for a separate trial, and, after leave granted, filed a cross-petition.

His cross-petition avers that he is the owner of the S. $\frac{1}{2}$ of said lot 4, and that he also owns a valuable interest in the north half of said lot; that he also owns the privileges, appurtenances and rights of way hereinafter mentioned; that for more than fifteen years he has been engaged in the coal business on lot 4; that said business is and has been very valuable and profitable; that lot 4 has a special value as a business location for a coal dealer; that his property in and appurtenant to lot 4 and sought to be condemned is of the value of $4500.00; that the damage to his business will exceed $1500.00, etc.

On motion, the court directed that the several pieces of property should be divided into four groups, and that a separate jury should be empannelled to try the questions to be submitted to a jury in connection with each group.   By an order entered without objection, the Circuit judge directed, that the south half of lot 4, and certain other property of other defendants, should be assigned to the fourth group, and that the questions in relation thereto should be submitted for trial to the fourth jury.

Before the juries were empannelled, the court below heard preliminary proof as to title, and entered preliminary orders finding that certain defendants were owners of certain pieces of property.    On June 6, 1888, a preliminary order or decree was entered in reference to the south half of lot 4 belonging to appellee, and being the only property involved in this appeal.    By the terms of this preliminary order, it was found, that Ward was the owner of the S. $\frac{1}{2}$ of lot 4 subject to a right of way over the same "which is appurtenant to the north half of said lot and held and enjoyed by the owner thereof;" that Ward owns and enjoys, as appurtenant to said south half, 1st—a right of way over and across the north half of lot 4 to the south half thereof and back again for teams and men, 2d—a coal office on the north half of the lot used in connection with his business on the south half, 3d—an undivided one half of a Fairbanks scales located on said north half and on Fourth Avenue immediately north of said lot, 4th—an undivided one half of a switch-track in an alley 18 feet wide on the west side of said lot 4, which switch-track, connecting at the south with the C. and A. R. R. track and running close to the west line of lot 4 northward and across and north of Fourth Avenue, was formerly built and paid for, one half by the then owner of the south half of the lot and one half by the then owner of the north half thereof, for the convenience of business upon the lot, and under an agreement duly recorded in Will county between the said owners, that the said scales and side track should be used jointly; that the undivided one half of said scales and switch-track have been conveyed with the south half of the lot and as appurtenant thereto in all subsequent conveyances, and the switch-track has been kept in repair jointly by the said owners; that the rights above specified, with the said alley 18 feet wide and another alley 14 feet wide on the south end of lot 4, used by Ward in connection with the south half thereof, have all been enjoyed and used by Ward,

and his grantors of said south half, in their business, carried on on said south half, for more than twenty years, etc.

Afterwards on June 11, 1888, the case was submitted to the jury who returned a verdict of $2500.00, to be paid by the petitioner to the owner of the south half of lot 4 (subject to the right of way over the same appurtenant to the north half), with the rights, privileges and appurtenances aforesaid, as the just compensation for taking the same. From the judgment rendered upon this verdict the present appeal is prosecuted.

The first error assigned by appellant has relation to the preliminary order entered by the trial court. It is claimed, that the court has no power, in a condemnation proceeding, to enter a decree, determining the title of the defendant or cross-petitioner to the property to be condemned, before submitting to the jury the question of the compensation to be paid for taking the property. It is especially insisted, that, in this case, it was for the jury to determine whether or not the easements and other rights and privileges, claimed to have been appurtenant to the south half of the lot, were actually owned by appellee and used by him in connection with his business, and that the decision of these matters by the court was an invasion of the province of the jury and a withdrawal from them of questions of fact, which should have been submitted to their consideration. We do not deem it necessary to pass upon the point thus made for the reason that appellant is estopped from making it in this court by its failure to insist upon it in the court below. It is always allowable for the parties in a civil action to waive a jury and submit their case or any part of it to the court for decision.

In the course of the proceedings below, appellant made no objection to the submission of these preliminary matters to the court, but, on the contrary, united with the appellee in a trial of them before the judge without a jury. We find the following entry in the record: "And now again comes said petitioner by its attorneys, and the said parties, interested in

the property, which, by a former order entered herein, is to be submitted to the fourth jury herein to be called, also come, and the court sits and hears *the preliminary proofs offered by said several parties*." This entry appears under date of May 29, 1888, and no objection was made nor exception taken by appellant.

After appellee had introduced his preliminary proof to the court, without objection, on the part of appellant, that the court was hearing such proof without a jury, the record then recites, under date of June 2, 1888, that "the petitioner then offered in evidence, as preliminary proof in its behalf to the court, a deed from H. S. Carpenter to C. S. F. and C. R'wy Co." etc., and that "thereupon the petitioner, in its preliminary proof to the court, called H. S. Carpenter, who testified," etc.

It is true, that, at the close of that part of the decree of June 6, 1888, which has reference to the south half of lot 4, appears the following: "to which ruling and order of the court the petitioner now here excepts." But this exception has reference to the conclusions reached by the court after hearing the preliminary proofs, and not to the fact that the court heard and passed upon such proofs without a jury. The record shows, that appellant as well as appellee introduced preliminary proofs without objection or protest, and that, upon such introduction, suggestions were made by appellant's counsel as well as by counsel for the cross-petitioner.

It is next objected by appellant, that the decree of June 6, 1888, erroneously found appellee to be the owner of the appurtenances therein named. We think the evidence sustains the findings of the decree.

First, as to the right of way over the north half of the lot. Jacob Powles, the original owner of lot 4, by deed dated June 24, 1867, and recorded November 26, 1868, conveyed the north half of the lot to Cagwin, reciting in the deed that he "expressly reserves from this conveyance the right of way over and across the north half of said lot to the south half thereof and back

again for teams and men." The same reservation is contained in all the successive conveyances of the north half from Cagwin down to Carpenter, the grantor of appellant, all of which conveyances were duly recorded. While Jacob Powles was in the use and enjoyment of the right of way thus reserved, he conveyed the south half of the lot by warrantee deed, dated February 20, 1869, to Daniel Powles and Barbaker; the two latter, by warrantee deeds dated February 22, 1870, and November 29, 1871, conveyed the south half to appellee Ward, and were using the right of way at these dates. The three latter deeds were duly recorded. They convey the south half of the lot "with all the hereditaments and appurtenances thereunto belonging or in any wise appertaining." This right of way was an appurtenance to the south half at the time of these conveyances, and passed to appellee with the land. "Some things will pass by the conveyance of land as incidents appendant or appurtenant thereto. This is the case with the right of way or other easement appurtenant to land." (*Morrison* v. *King*, 62 Ill. 30.)

Second, as to the undivided half of the scales and the switch-track. June 24, 1867, Jacob Powles, owning the south half of the lot, and Cagwin, owning the north half thereof, made an agreement, which was afterwards recorded, in which it was recited that Cagwin had bought an undivided half of the scales, and that the C. A. and St. L. R. R. Co. was about to build a side track along the west side of the lot, connecting with the main track of the road by means of a switch for the convenience of business on said lot, and it was thereby agreed that each should own, pay for and keep in repair the undivided half of said scales and side track, and that the side track should be laid and maintained along the west side of the lot, and that the scales should be owned and used jointly. This agreement was assigned by Cagwin to his grantee of the north half, and passed by successive assignments, endorsed on the contract and recorded, to the subsequent owners of the north half. The

deed from Jacob Powles to Barbaker and Daniel Powles, and the deeds from the latter to Ward, convey the south half of the lot, "together with an undivided one half of a Fairbanks scales, now located and in use on the north half of said lot 4, and also the interest of party of first part in and to a switch track skirting the west side of said lot, laid down * * * for the convenience of business on said lot."

Third, as to the coal office. The language of the preliminary order or decree is: "that said Hugh Ward also owns and enjoys, as appurtenant to the south half of lot 4, and uses in connection with his business carried on thereon a coal office on the north half of said lot." The original deed of June 24, 1867, contains this language: "and saving and reserving also the coal office now located on said north half." The testimony shows, that appellee owned the coal office, and that he and his grantors used it for more than twenty years in connection with the business carried on on the south half of the lot.

In addition to the documentary evidence, the oral proof shows, that, for more than twenty years, appellee and his grantors had made use of the right of way, and the side track or switch track, and the scales and coal office in connection with the coal business conducted on the south half of the lot. Fourth Avenue ran along the north side of lot 4. The office was on the north-east corner of the north half of the lot fronting on Fourth Avenue. Wagons and teams, used in the coal business, passed from the south half across the north half west of the coal office, along the reserved right of way, to the scales connected with the coal office. Ward and his grantors kept the switch-track in repair and used it jointly with the owners of the north half for purposes connected with the business. There is some evidence tending to show, that Ward's teams sometimes went, during the last three years, from the south half of the lot across lot 3 to the east of lot 4 in order to reach the scales and office, but there was no abandonment of the right of way across the north half, which was also used.

The next error assigned by appellant has reference to the instructions given to the jury in behalf of appellee. Two of these instructions are said to be erroneous because they tell the jury, that the rights and privileges above mentioned are appurtenant to the south half of the lot and are property interests connected therewith, and because they direct the jury to take such rights, privileges and appurtenances into consideration in determining, under the evidence, the fair market or cash value of the south half of the lot. We see no error in the instructions in this regard.

Suppose that a man owns a farm surrounded entirely by farms belonging to other parties, so that he has no access to it except by passing over land owned by some one of his neighbors. A farm thus situated without means of ingress and egress might be almost valueless. But if its owner at the same time owned a right of way across a portion of the adjoining territory, so that he could go to and from his farm at will, the latter would have a greatly increased value. Why is it not proper to consider the farm as having such a right of way incident to it in fixing its value?

So, in the case at bar, the south half of lot 4 is so located that it is fit only for a coal yard or some similar use. But its fitness even for this purpose depends on there being an office on a public street, a wagon road for men and teams to Fourth Avenue over the north half of the lot, a pair of weighing scales in connection with the street and office, a railroad switch or sidetrack for shipping in coal on the west side of the lot. By itself the south half of the lot has little value; with the privileges thus designated it does have a very considerable value to its owner for the uses, to which he applied it. These privileges do not constitute other and outside property interests not a part of the land taken by appellant. They are appurtenant to the land taken and go with it.

The instructions do not compel appellant to pay for the coal office itself. They merely designate the right to use so much

of the north half of the lot, as is occupied by the coal office, for the purposes of such an office in connection with the business carried on on the south half. Such right, as well as the privilege of using the scales and switch and right of way, made the south half valuable to appellee as a coal yard. When appellant takes the ground embraced within the limits of the south half of the lot, it also takes or destroys these appurtenances.

It is complained that the instructions take from the jury certain questions of fact. But the questions of fact referred to are only those, which concern the matter of title and the matter of interest in the appurtenances above mentioned. As these questions were settled by the court in its preliminary order entered after a hearing without a jury by consent of both parties, it was not error to assume the existence of the appurtenances in the instructions to the jury. The jury were merely to take into consideration the appurtenances, whose existence had already been decided upon by the court, in determining the value of the land.

We perceive no such error in the record as will justify a reversal.

The judgment of the Circuit Court is, therefore, affirmed.

*Judgment affirmed.*

Subsequently, on May 16, 1889, upon rehearing, the following additional opinion was filed:

Mr. Justice Wilkin: On examination of the petition for a rehearing in this case, we were led to believe that the error assigned on instructions given at the request of appellee, was entitled to further consideration, and to that end granted the rehearing.

The only ground upon which a reversal of the judgment below is now urged is, that the trial court erroneously included in its order of June 6, 1888, "a coal office, an undivided one-half of platform scales, and an undivided one-half of a switch-

track," as *appurtenant* to the south-half of lot 4, the first two being located on the north half of said lot, and the switch-track on an alley west of and adjacent to said lot 4, and ordering that in estimating the compensation to be paid appellee, they should be considered as a part of said south half. Also, that the same error was carried into instructions given on behalf of appellee, the effect being to charge appellant with the value of the pieces of property so designated, thus, as is said, adopting an improper measure of damages, to the prejudice of appellant.

We are not able to perceive, from the manner in which the trial was conducted before the jury, how the preliminary order of the court could have influenced their verdict. We are of opinion, however, that the instructions were calculated to lead the jury to understand that the value of said property was a proper element of damages to be considered by them in making their verdict. This, under other facts and circumstances, would doubtless work a reversal of the judgment below, but we do not think such should be the result in this case. In other words, we think, under all the evidence, appellee was justly entitled to recover of appellant the value of the property, and whether that was accomplished by the misuse of the term "appurtenances," or otherwise, is a matter of no importance to appellant. We have already decided that the coal office, scales and switch-track, though not located on appellee's land, were his property. That appellant has taken them, can not, in the light of this evidence, be denied. Then, why should it not pay for them?

The record shows that it had obtained a deed to the north half of lot 4 prior to filing its petition, though it was not recorded until afterward. On page 48 of the record we find this recital: "Hearing of further preliminary proof on the part of the petitioner, touching the property of Hugh Ward." And on page 49 the finding of the court, as follows: "And the court doth further find and adjudge, that by deed from

Henry S. Carpenter and wife, of date March 16, 1888, and recorded in the recorder's office of Will county, Illinois, on June 9, 1888, the petitioner herein *became the owner of the appurtenances* to the north half of said lot 4, *in said former order herein stated or referred to*, and that the petitioner has contracted with said Carpenter to disconnect and remove the switch-track from the north half of said lot 4." This further order was made at the instance of petitioner, and no objection or exception thereto appears to have been made. Appellee, by his cross-petition, had set up his ownership to this property. There is nothing whatever in the record to show that appellant at any time offered to allow appellee to remove it from said north half, nor that he was offered a reasonable opportunity so to do; nor is there any evidence tending to prove that the property had any value to appellee if left remaining thereon, or that its removal was even practicable, even if he had been allowed to remove it.

When it is sought to condemn private property for public use, the owner is entitled to just compensation for any property taken or injured, such compensation to be estimated according to the existing condition of the property at the time. He is not required to remove buildings or other things attached to the realty in order to lessen his damages, nor has he a right to do so without the consent of the petitioner. True, this property was not on the south half of lot 4, but appellee's rights thereto being set up, appellant could not, after acquiring the title to the north half, take it without making compensation therefor. Moreover, in this case, the verdict of the jury and the judgment below give appellant the property, and the judgment expressly provides, "that appellant, upon payment to appellee of the amount found by the jury, shall take possession of and hereafter hold for railroad purposes," not only the south half of lot 4, but "a coal office on the north half of said lot, and one undivided half interest in one Fairbanks' scales, now located on the north half of said lot,   *   *   *   and the undi-

vided half interest of said Hugh Ward in and to a switch-track on the west of said lot, all as appurtenant to said south half," etc. Thus the error in the preliminary order and instructions complained of, is carried into the final judgment, giving appellant all that it is required to pay for.

The witnesses on behalf of appellant and those on behalf of appellee differ very widely in their estimate of damages. There was no proof as to the value of the property in question. Neither party seems to have given any attention to that subject on the trial, and no witness on either side includes the value of the coal house, switch and scales in his estimate, and it may well be doubted whether or not such value entered into the estimate made by the jury. Certain it is that in no view of the case can it be said that the verdict was increased by the instructions complained of, beyond the naked value of such property, which being in possession of appellant, and the title thereto vested in it by the order and judgment of the court below, it must pay for.

*Judgment affirmed.*