FLETA R. MARLOW *et al.*, Plaintiffs-Appellants, v. LAVERNE MALONE *et al.*, Defendants-Appellees (Darrell Miller, Defendant).

Fourth District No. 4—99—1024

Argued June 13, 2000.—Opinion filed August 3, 2000.

COOK, P.J., dissenting.

Garry Bryan (argued), of Ray Moss & Associates, P.C., of Clinton, for appellants.

Julie A. Beyers (argued), of Heavner, Handegan & Scott, of Decatur, for appellees.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In May 1993, plaintiffs, Fleta R. Marlow, H. Glenn Marlow, Kathryn Sronce, Janice Niblack, Donna Levitas, and Harold W. Marlow, filed a complaint against defendants, LaVerne Malone, Sharon Malone, William C. Edwards, Bertha Alice Edwards, and Darrell Miller, asking the trial court to quiet title regarding a railroad right-of-way. In December 1998, the trial court dismissed plaintiffs' second-amended complaint with prejudice for failure to state a cause of action. 735 ILCS 5/2—615 (West 1998). Plaintiffs appeal, claiming that the trial court erred when it misinterpreted section 912 of Title 43 of the United States Code (section 912) (43 U.S.C. § 912 (1994)) as not giving them title to an abandoned railroad right-of-way as adjacent landowners. We affirm.

## I. BACKGROUND

### A. Procedural History

In May 1993, plaintiffs filed a complaint, asking the trial court to quiet title to a railroad right-of-way in their favor. Plaintiffs' original complaint alleged that (1) from 1967, plaintiffs owned property west of the Illinois Central Railroad Company (ICR) right-of-way running through section 26 in De Witt County; (2) in 1986, ICR abandoned the right-of-way; (3) when ICR abandoned the right-of-way, plaintiffs became the fee simple owners of the half of the right-of-way lying west of the right-of-way centerline by operation of section 912; (4) in 1988,

ICR purported to convey this right-of-way to William C. Edwards; (5) thereafter, Edwards purported to convey his interest to the other defendants; and (6) because plaintiffs owned the right-of-way, defendants were unlawfully possessing the disputed area. In July 1993, defendants filed a motion to dismiss for failure to state a cause of action.

In October 1993, before the trial court ruled on defendants' motion to dismiss, plaintiffs filed a first-amended complaint, alleging essentially the same claims outlined in their original complaint. In November 1993, defendants filed a motion to dismiss plaintiffs' first-amended complaint for failure to state a cause of action. By the docket entry dated July 8, 1994, the trial court granted defendants' motion to dismiss, stating: "For plaintiff[s] to sustain a cause of action, [they] must allege a fee interest in the abandoned right[-]of[-]way, which by [their] complaint [they have] failed to do" and that "[i]t is not sufficient to allege *** title to property adjacent to the abandoned right[-]of[-]way."

In August 1994, plaintiffs filed a motion to reconsider. After a hearing, the trial court denied plaintiffs' motion to reconsider by docket entry dated October 7, 1994.

In November 1994, plaintiffs filed a second-amended complaint, alleging nearly identical claims as those asserted in their previous complaints. Later that month, defendants filed a motion to dismiss plaintiffs' second-amended complaint. By docket entry of December 16, 1998, the trial court dismissed plaintiffs' second-amended complaint with prejudice. 735 ILCS 5/2—615 (West 1998). Plaintiffs filed a motion to reconsider in January 1999. In October 1999, plaintiffs filed a motion for leave to file a third-amended complaint *instanter*.

In December 1999, the trial court conducted a hearing regarding plaintiffs' motion to reconsider the dismissal of plaintiffs' second-amended complaint and plaintiffs' motion for leave to filed a third-amended complaint. After hearing arguments, the trial court stated that it "[believed] that the focus and the key to the issue [was] title" and that "under [section 912] *** if a right-of-way is abandoned for railroad purposes, the title [vests] in the person or the corporation, the entity who owned the land underlying or traversed by the right-of-way." The trial court denied plaintiffs' motion to reconsider and also denied plaintiffs' request to file a third-amended complaint with prejudice. Plaintiffs appealed.

### B. Historical Background of Section 912

Plaintiffs claim title to the right-of-way by operation of section 912. Accordingly, we must review the background of section 912 to fully understand the issues.

In the second half of the 1800s, Congress began to pass legislation to encourage the expansion of railroads by offering rights-of-way across federal lands. *Idaho v. Oregon Short Line R.R. Co.*, 617 F. Supp. 207, 210 (D. Idaho 1985). In the 1850s, Congress enacted bills that explicitly granted public lands to aid the construction of a cross-country railroad. *Barney v. Burlington Northern R.R. Co.*, 490 N.W.2d 726, 729 (S.D. 1992); Act of September 20, 1850, 9 Stat. 466 (1850). Railroad lines were first built connecting southern states to Illinois. *Barney*, 490 N.W.2d at 729. Afterward, prompted by the California gold rush, Congress urged the railroads to extend into the western United States. *Barney*, 490 N.W.2d at 729. Against this 1850-60s backdrop, Congress' legislative initiatives included generous grants of land to accompany the rights-of-way along the transcontinental railroads. *Idaho*, 617 F. Supp. at 210. Congress granted the railroads additional land from the public domain for the rail companies to sell and, thereby, generate revenue to subsidize the railroad construction. *Barney*, 490 N.W.2d at 729. The right-of-way presently in dispute was located along one of these sections of land sold by the railroad to finance the rail system.

As railroad lines were further developed, consolidated, or rerouted, railroad rights-of-way were abandoned, leaving the use and ownership of the land questionable. Several court decisions emerged addressing the disposition of the lands within various abandoned rights-of-way. Specifically, in 1903, the United States Supreme Court ruled that the United States' right-of-way grants contained an implied reversionary interest in the federal government in rights-of-way eventually abandoned by a railroad. *Northern Pacific Ry. Co. v. Townsend*, 190 U.S. 267, 271, 47 L. Ed. 1044, 1047, 23 S. Ct. 671, 672 (1903). Subsequently, in 1914, the United States Court of Appeals for the Ninth Circuit stated that the Supreme Court's opinion in *Townsend* reflected Congress' intent that abandoned rights-of-way should revert to the federal government. *H.A. & L.D. Holland Co. v. Northern Pacific Ry. Co.*, 214 F. 920, 923 (9th Cir. 1914).

As courts began to render these decisions, Congress recognized the inherent problems associated with regaining title to these narrow strips of land having limited use. *State of Wyoming v. Andrus*, 602 F.2d 1379, 1384 (10th Cir. 1979). Congress also recognized the confusion of having multiple laws addressing the disposition of these rights-of-way. Congress responded to the *Townsend* and *H.A. & L.D. Holland Co.* decisions by enacting section 912, effective March 8, 1922 (42 Stat. 414 (1922)). *King County v. Burlington Northern R.R. Corp.*, 885 F. Supp. 1419, 1422 (W.D. Wash. 1994). The sole purpose of section 912 was to provide a mechanism by which the federal government could automatically divest itself of its reversionary interests in land originally granted

for railroad usage. *City of Buckley v. Burlington Northern R.R. Corp.*, 106 Wash. 2d 581, 586, 723 P.2d 434, 437 (1986).

## C. History of Disputed Real Property and Right-of-Way

On September 20, 1850, Congress granted the State of Illinois a 200-foot-wide right-of-way through public lands in Illinois to construct a railroad from Cairo to La Salle, with a branch to Chicago and another to Dubuque. Act of September 20, 1850, 9 Stat. 466 (1850); *State v. Illinois Central R.R. Co.*, 246 Ill. 188, 197, 92 N.E. 814, 820 (1910). The United States also granted Illinois every alternate section of land for six miles in width on each side of the right-of-way to be sold to finance the construction of the Illinois railroad lines. Act of September 20, 1850, 9 Stat. 466 (1850); *Illinois Central*, 246 Ill. at 197, 92 N.E. at 820. The parcels of land granted to Illinois under this "checkerboard" land-grant scheme were designated with even numbers. Act of September 20, 1850, 9 Stat. 466 (1850). The right-of-way in dispute crosses the section of land numbered 26.

In February 1851, the State of Illinois incorporated the ICR to undertake the railroad expansion through Illinois. *Illinois Central*, 246 Ill. at 198, 92 N.E. at 820. In March 1851, Illinois Governor Augustus C. French deeded the land granted to Illinois by the United States to ICR, allowing ICR to construct the Illinois portion of the Chicago, Illinois, to Mobile, Alabama, cross-country railroad system.

The record does not reflect the complete chain of title to this land. Apparently, no United States patents conveying title to this land appear of record in the office of the De Witt County recorder either before or after the time of the 1850 statutory land grant. The conveyance immediately following the 1851 conveyance from Illinois to ICR is an 1853 conveyance by ICR of a portion of the land traversed by the disputed right-of-way to William A. Williams (Williams) which reserved the 200-foot right-of-way to ICR. The record shows the next conveyance as being a 1963 conveyance by ICR of another portion of section 26 to Henry and Robert Magill (Magills), which "[reserved] *** the right[-]of[-]way to the said Railroad Company 200 feet wide where the tract of said Railroad has been laid over the said land." In 1967, plaintiffs acquired the land lying west of the ICR right-of-way through the chain of title of Williams and/or the Magills.

From 1851 until 1986, ICR or Illinois Central Gulf Railroad (ICGR), a Delaware corporation and ICR's successor in interest, occupied and utilized the disputed right-of-way. Plaintiffs claim that, in 1986, ICGR applied to the Interstate Commerce Commission (ICC) for permission to abandon certain portions of its right-of-way. That same year, the ICC issued a certificate of abandonment, and ICGR ceased its

use and occupancy of the disputed right-of-way. ICGR removed its tracks sometime during or after 1986.

In 1988, ICGR quitclaimed all its right, title, and interest to the original 200-foot-wide railroad right-of-way in section 26 to William C. Edwards. Between 1988 and 1994, Edwards engaged in various conveyances with the other defendants regarding this right-of-way. Because plaintiffs claim that they own the western one-half of the right-of-way by operation of section 912, plaintiffs claim that the conveyances to and among the defendants are void.

## II. ANALYSIS

### A. Requirements for Quiet Title Action

■ On appeal, plaintiffs argue that the trial court erred by dismissing their case for failure to allege facts sufficient to state a quiet title cause of action. "It is a fundamental requirement in an action to quiet title *** that the plaintiff must recover on the strength of his own title, although it is not required that a perfect title be established." *Reynolds v. Burns*, 20 Ill. 2d 179, 193, 170 N.E.2d 122, 130 (1960); *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 812, 480 N.E.2d 1312, 1327 (1985). To prevail in a quiet title action, plaintiffs must establish title superior to that of defendants. *Wilder v. Finnegan*, 267 Ill. App. 3d 422, 425, 642 N.E.2d 496, 499 (1994). Moreover, where a plaintiff has no title in himself, he cannot maintain an action for quiet title. *Ford v. Witwer*, 383 Ill. 511, 514, 50 N.E.2d 714, 715 (1943); *Lakeview*, 134 Ill. App. 3d at 812, 480 N.E.2d at 1327.

Based on these precepts, the trial court determined that plaintiffs had alleged no title by virtue of deed or by operation of section 912. Accordingly, the trial court dismissed plaintiffs' second-amended complaint for failure to support a cause of action. We review a trial court's dismissal for failure to state a cause of action *de novo*. *Young v. Forgas*, 308 Ill. App. 3d 553, 566, 720 N.E.2d 360, 369 (1999).

### B. Interpretation of Section 912

Plaintiffs claim that the trial court erred in interpreting section 912 as excluding their claims. Plaintiffs ask this court to interpret section 912 as vesting the United States' reversionary interest in current landowners of the subdivision traversed by the right-of-way merely by virtue of their adjacency to the right-of-way. Specifically, plaintiffs claim that they own title to the westerly one-half of the disputed right-of-way by operation of section 912. We find no language in section 912 to support plaintiffs' argument.

■ In construing statutes, the goal of the courts is to ascertain and effectuate the legislature's intent. *Department of Public Aid ex rel. Da-*

*vis v. Brewer*, 183 Ill. 2d 540, 554, 702 N.E.2d 563, 569 (1998). To determine the legislature's intent, courts must first look to the statutory language as the best indication of the intent of the drafters. *Davis*, 183 Ill. 2d at 554, 702 N.E.2d at 569. If the language of the statute is plain and unambiguous, it will be given effect without resorting to other aids of construction. *Davis*, 183 Ill. 2d at 554, 702 N.E.2d at 569. We conduct *de novo* review when construing a statutory term. *Davis*, 183 Ill. 2d at 554, 702 N.E.2d at 569.

### 1. *Plain Language*

Plaintiffs argue that section 912 vests the interest to the right-of-way in the current owners of land within the subdivision traversed by the right-of-way, by virtue of their adjacency. We disagree.

■ Although section 912 has been described as "not conducive to leisurely reading" (*Idaho*, 617 F. Supp. at 216), the plain language of section 912 clearly does not support plaintiffs' interpretation. Section 912 states that, after a railroad company abandons a right-of-way granted by the United States:

> "all right, title, interest, and estate of the United States in said lands shall *** be transferred to and vested in any person, firm, or corporation, assigns, or successors in *title* and *interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision* or subdivisions *traversed* or occupied *by such railroad ***.*"

(Emphasis added.) 43 U.S.C. § 912 (1994).

Contrary to plaintiffs' interpretation, with one exception for municipalities, section 912 passes title to abandoned rights-of-way to persons, entities, or their successors in title who have received paper title or can establish title to the land underlying the right-of-way, independent from the operation of section 912. Therefore, the United States' reversionary interest will only vest in persons or entities having title to the land underlying the railroad right-of-way. Title is, consequently, imperative to a section 912 claim.

### 2. *Federal Cases*

■ Although Illinois courts have not previously addressed this issue, courts of other jurisdictions agree that a person claiming the United States' reversionary interest under section 912 must have title to the land underlying the right-of-way. In *Buckley*, 106 Wash. 2d at 587, 723 P.2d at 437, in an *en banc* opinion, the Supreme Court of Washington interpreted section 912 as requiring a plaintiff to establish title to the land underlying the right-of-way as a condition precedent to a valid claim. The court in *Buckley* stated:

> "This language clearly suggests that Congress intended for patent

or titleholders to receive the reversion *automatically* upon a decreed abandonment, without further instruments of conveyance or resort to litigation. As such, this clause can be viewed as an administrative 'clean-up' measure, intended not to establish a condition precedent to receipt of the reversion (for the condition is stated in the reversionary clause), but rather to simplify the procedure by which patent or titleholders could obtain reversion. \*\*\*

As we interpret [section] 912, the condition precedent to receipt of the federal government's reversionary interest in an abandoned railroad right-of-way \*\*\* by anyone other than a municipality is 'title'. If a person, firm[,] or corporation has title to the underlying fee, the reversion vests automatically, unless the right-of-way runs through a municipality." (Emphasis in original.) *Buckley*, 106 Wash. 2d at 586-87, 723 P.2d at 437.

See also *City of Aberdeen v. Chicago & North Western Transportation Co.*, 602 F. Supp. 589, 592 (D.S.D. 1984). Our interpretation, therefore, aligns with courts from other jurisdictions.

### 3. *Legislative History*

We also recognize that because the language of section 912 is plain and unambiguous, we need not resort to the legislative history. Nonetheless, we find that the legislative history supports our interpretation.

The dialogue found in the United States' congressional record shows that the proponents of bills leading to the adoption of section 912 clearly intended for title to determine who received abandoned rights-of-way. Specifically, the proponents stated that "[t]he only person who would get [the right-of-way] is some one [*sic*] who has received the [underlying] property \*\*\* subject to right-of-way [*sic*] of the easement of the railroad company." 59 Cong. Rec. 6474 (1920). The proponents further explained that "[t]he person who gets [the right-of-way] is the person to whom the title \*\*\* may have been or may be granted." 59 Cong. Rec. 6475 (1920). Therefore, our interpretation harmonizes with the legislation's proponents who originally drafted the provision to require title for a valid claim to an abandoned right-of-way.

### C. Title to the Disputed Right-of-Way

### 1. *Quality of Title Needed for a Section 912 Claim*

Having determined that title is required for section 912 claims, we must determine what type or quality of title a plaintiff must establish to be successful. Plaintiffs argue that the title required for a section 912 claim is title in the subdivision traversed by the right-of-way and not title to the land actually underlying the right-of-way itself.

Plaintiffs rely on the following language to support their argument: "all *** interest *** of the United States in [abandoned rights-of-way] shall *** be transferred to and vested in any person *** to whom *** title of the United States may have been *** granted, conveying or purporting to convey *the whole of the legal subdivision.*" (Emphasis added.) 43 U.S.C. § 912 (1994). This language merely indicates that a conveyance or purported conveyance of the entire subdivision, without qualification, includes title to the land underlying the right-of-way. Thereafter, the owner of each portion of the subdivision acquires the absolute, unfettered right to convey the property, including his interest in the land underlying the right-of-way, in any manner or proportions. See *Johnson v. La Grange State Bank*, 73 Ill. 2d 342, 357, 383 N.E.2d 185, 192 (1978); *Wood v. Wood*, 284 Ill. App. 3d 718, 722, 672 N.E.2d 385, 388 (1996).

Plaintiffs further argue that if section 912 requires plaintiffs to establish title in the land underlying the right-of-way in the present case no one could ever establish title because the United States never issued a patent regarding that land before or after it granted the right-of-way in 1850. Plaintiffs misconceive the meaning of section 912. Plaintiffs mistakenly believe that to acquire the interest of the United States' interest in the right-of-way, the landowner or his predecessor must have received a direct patent.

We agree with plaintiffs that section 912 applies in situations in which the United States granted the right-of-way to a railroad, yet issued a separate patent for the entire subdivision traversed by the right-of-way. The legislative history indicates that Congress clearly anticipated such a scenario. H.R. Rep. No. 67-217, at 2 (1921). Furthermore, the language of section 912 plainly states that it applies to situations in which "title of the United States may have been or may be [conveyed]." 43 U.S.C. § 912 (1994). We find, however, that section 912 is also applicable to situations, as in the present case, in which no patent was issued.

Section 912 states that all interest of the United States in abandoned rights-of-way vests in any person to whom title of the United States may have been granted, "conveying or *purporting* to convey the whole of the legal subdivision." (Emphasis added.) 43 U.S.C. § 912 (1994). Therefore, section 912 also applies in situations in which an attempt to pass the United States' fee interest in the whole subdivision, including the land underlying the right-of-way, is technically unsuccessful.

Therefore, under section 912, a plaintiff must establish title to the land underlying the right-of-way. The plaintiff need only establish this title by showing a chain of title leading back to the United States. The

chain of title need not lead to a United States patent. For purposes of section 912, title is sufficient if based upon a railroad company's purported fee conveyance of the entire subdivision, including the land underlying the right-of-way, which the railroad company originally received as part of a United States railroad grant.

Plaintiffs also fail to recognize that section 912 was intended to prevent what their interpretation requires: the United States to grant a separate and additional patent regarding the land containing the right-of-way. Certainly the United States could have disposed of its reversionary interest in every right-of-way abandoned. Congress, however, enacted section 912 to prevent the necessity of making individual dispositions of reverted rights-of-way. Therefore, plaintiffs' argument is against the plain language and purpose of the section 912. To adopt plaintiffs' interpretation would nullify section 912.

Giving section 912 its plain meaning, we conclude that a current landowner of property adjacent to a right-of-way who claims title to the right-of-way by operation of section 912 must produce title to the land underlying the right-of-way. Such title may emanate from a United States patent, a purported conveyance leading from title granted from the United States, or any other manner in which state law allows, provided that such title leads back to either a United States patent or a purported railroad conveyance.

## 2. *Plaintiffs' Title*

■ In the present situation, the United States granted subdivision section 26 as part of its plan for ICR to sell land and subsidize the construction of the railway. Because the United States intended ICR to sell this land to finance the construction of the rail system, the lands were granted to ICR, and subsequently to buyers, in fee simple. The United States granted the land underlying the rights-of-way, however, in limited fee with an implied condition of reverter. *City of Maroa v. Illinois Central R.R.*, 229 Ill. App. 3d 503, 509, 592 N.E.2d 660, 664 (1992).

In 1853, ICR purported to convey a fee interest in the southwest quarter of the southwest quarter of section 26 to Williams, including the portion of land underlying the disputed right-of-way, merely reserving the right-of-way to ICR. Subsequently, in 1963, ICR deeded most of the remaining subdivision to the Magills, "reserving *** the right[-]of[-]way to [ICR] 200 feet wide where the tract of [ICR] has been laid over the said land." ICR's deed to the Magills purported to convey a fee interest in the subdivision, including the land underlying the right-of-way. ICR's intention in each deed is evinced by (1) the deed's reference to the subdivision as conveying an unrestricted right

in land, including the land underlying the right-of-way subject only to ICR's reservation of the right-of-way (*Penn Central Corp. v. Commonwealth Edison Co.*, 159 Ill. App. 3d 419, 422, 512 N.E.2d 118, 119-20 (1987)), and (2) the deed's failure to limit the estate conveyed (*Keen v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, 392 Ill. 362, 371, 64 N.E.2d 499, 504 (1945)). Therefore, in each case, ICR purported to convey portions of the subdivision, including a fee interest in the land underlying the right-of-way, reserving the easement for itself. Although ICR could not actually convey such an interest in the right-of-way, this *purported* conveyance sufficiently substituted for a United States patent for purposes of section 912 claims.

Plaintiffs' deed, however, specifically excludes the land underlying the right-of-way. Plaintiffs' deed states that plaintiffs received "[t]hat part of the Southwest Quarter (SW 1/4) of the Southwest Quarter (SW 1/4) of Section 26, lying West of the Illinois Central Railroad right-of-way." Therefore, plaintiffs do not hold paper title to the land underlying the right-of-way.

Additionally, plaintiffs have consistently acknowledged in their trial court pleadings, in oral arguments during the December 1999 hearing on their motion to reconsider, in their appellate briefs, and again at oral argument on appeal that their only claim of title rested upon an interpretation of section 912 that we have now determined to be erroneous. Therefore, plaintiffs cannot acquire title by operation of section 912.

Moreover, although the dissent argues otherwise, plaintiffs *never* alleged title to the land underlying the right-of-way until after the trial court dismissed their second-amended complaint with prejudice. Although the dissent relies heavily on plaintiffs' last attempt to revive their cause of action in their third-amended complaint, their claim of title in that complaint was also supported solely by their erroneous interpretation of section 912 as evinced by their arguments during the December 1999 hearing. Moreover, during the December 1999 hearing, plaintiffs blatantly admitted that they have no legal title to the land underlying the right-of-way based on their assumption that "it [was] impossible to allege a fee simple interest in that right-of-way." Because their interpretation of section 912 was incorrect and they never asserted any other basis for title, plaintiffs have failed to allege sufficient facts to state a cause of action. Plaintiffs' lack of title precluded them from maintaining a quiet title action. Therefore, the trial court properly dismissed their second-amended complaint with prejudice.

We decline to mount arguments on behalf of the plaintiffs, regarding how they may have attempted to claim title to the right-of-way. We

choose to believe plaintiffs' own argument that they lacked title or, alternatively, that their title rested solely on their interpretation of section 912.

The dissent urges us to read plaintiffs' deed—which states that plaintiffs received "that part of the Southwest Quarter (SW 1/4) of the Southwest Quarter (SW 1/4) of Section 26, lying West of the Illinois Central Railroad right-of-way"—as though it also said " 'and any appurtenances thereto, including any right to reverter acquired from the United States in the land underlying that right-of-way.' " We find no support for this position.

"[I]n construing a deed, the overriding concern is to ascertain and give effect to the intention of the parties. *** Absent an ambiguity in the deed, the intention of the parties must be discerned solely from the language of the instrument, without consideration of extrinsic factors." *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 467, 575 N.E.2d 548, 551-52 (1991). Plaintiffs' deed is not ambiguous in any regard. Plaintiffs received only the land lying west of the ICGR right-of-way, and we decline to read anything further into the deed.

Moreover, the law regarding appurtenances does not apply to this situation. Essentially, the dissent's argument rests on the principle that a "right[-]of[-]way is an easement." *Kurz v. Blume*, 407 Ill. 383, 385, 95 N.E.2d 338, 339 (1950). Section 912, however, references all "right, title, interest, and estate" in the right-of-way, demonstrating that railroad rights-of-way, originally granted by the federal government for railroad expansion, are not mere easements. 43 U.S.C. § 912 (1994). We are, therefore, addressing the fee title to the land underlying the right-of-way and not merely the use of the land as an appurtenance.

Furthermore, even if this right-of-way could be considered an easement, it is not appurtenant to plaintiffs' parcel. "An easement is a right or privilege in the real estate of another." *McMahon v. Hines*, 298 Ill. App. 3d 231, 235, 697 N.E.2d 1199, 1203 (1998). An easement is considered appurtenant when the easement requires a dominant and a servient estate. *McMahon*, 298 Ill. App. 3d at 235, 697 N.E.2d at 1203. An appurtenance is a right or privilege incidental to the property conveyed. Webster's Third New International Dictionary 107 (1993). Upon conveyance, "the law implies a grant of all incidents rightfully belonging to that property at the time of conveyance and which are essential to the full and perfect enjoyment of the property." *Bishop v. Village of Brookfield*, 99 Ill. App. 3d 483, 490, 425 N.E.2d 1113, 1118-19 (1981).

Assuming, arguendo, this right-of-way was an easement, the right-of-way is not now nor has it ever been appurtenant or incidental to

the plaintiffs' land. The right-of-way was not created to benefit plaintiffs' land; it was granted for the construction and the promotion of a railway system through Illinois. Neither plaintiffs nor their predecessors in interest have historically had the right to use the right-of-way to benefit their land. Moreover, the right-of-way cannot be considered essential to the full and perfect enjoyment of plaintiffs' property. This right-of-way is not needed for egress, ingress, or the like. Plaintiffs simply want the property to farm because it is adjacent to other property they own. Just as section 912 does not provide that adjacency alone is sufficient to award land to an abandoned right-of-way, adjacency alone is insufficient to turn a neighboring strip of land into an appurtenance.

If plaintiffs had an interest in the right-of-way as an easement appurtenant, that interest would only permit them to use the easement on land owned by someone else. Such an interest is not "title" as required in a quiet title action or under section 912. Even the cases cited by the dissent acknowledge that an appurtenance is merely an easement or a privilege but is not a fee interest. *Messenger v. Ritz*, 345 Ill. 433, 437, 178 N.E. 38, 40 (1931); *Chicago, Santa Fe & California Ry. Co. v. Ward*, 128 Ill. 349, 357, 18 N.E. 828, 830-31 (1888).

The dissent asserts that we have interpreted section 912 "completely at odds with the other statutes and decisions on the subject" without explanation. 315 Ill. App. 3d at 820. The statute is self-explanatory and not at odds with other federal statutes and decisions. The statutes that the dissent analogizes to section 912 are state statutes. 315 Ill. App. 3d at 820. See 605 ILCS 5/9—127 (West 1998); 65 ILCS 5/11—91—2 (West 1998). However, rights created under federal statute are not governed by state law. *Bowman v. Illinois Central R.R. Co.*, 11 Ill. 2d 186, 199-200, 142 N.E.2d 104, 114 (1957).

Moreover, the plain language of section 912 supports our interpretation. The dissent looks beyond the language, purpose, and policy of section 912 to conclude that ownership of adjacent property alone is sufficient to acquire title under section 912. The dissent goes even further when it concludes that two different owners, each owning property abutting opposite sides of the right-of-way, will own to the centerline of the right-of-way upon abandonment. Nothing in the language of section 912 supports this interpretation. Our sole duty is to "interpret and apply statutes in the manner in which they are written." *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394-95, 712 N.E.2d 298, 305 (1998). A court must not rewrite statutes to make them consistent with the court's idea of orderliness and public policy. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 220, 447 N.E.2d 394, 399 (1983).

## III. CONCLUSION

Because plaintiffs can never establish title to the land underlying the right-of-way by operation of section 912 or by paper title, and they admit that no other possibilities exist for asserting a claim of title, plaintiffs have failed to allege sufficient facts to state a cause of action. The trial court properly dismissed plaintiffs' complaint with prejudice.

We affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

One thing certain about section 912 is that when railroad operations cease, the railroad has no power to convey any interest in its former right-of-way. A nuisance strip 200 feet wide and perhaps several miles long would be contrary to public policy. See 605 ILCS 5/9—127 (West 1998) (except where deed of dedication expressly provided otherwise, whenever any highway is vacated "the title to the land included within the highway or part thereof so vacated, vests in the then owners of the land abutting thereon"); 65 ILCS 5/11—91—2 (West 1998) (same rule as to municipal streets or alleys). " 'No doubt the rule, in its practical operations, subserves the public good by preventing the existence of strips of land of no great value, formerly a part of the highway, but on the abandonment of which would induce profitless and vexatious litigation.' " *Prall v. Burckhartt*, 299 Ill. 19, 25, 132 N.E. 280, 282 (1921), quoting *Gebhardt v. Reeves*, 75 Ill. 301, 307 (1874), *overruled on other grounds in Village of Auburn v. Goodwin*, 128 Ill. 57, 63, 21 N.E. 212, 213 (1889). No reason has been suggested for interpreting section 912 completely at odds with the other statutes and decisions on the subject.

Under section 912, the right-of-way goes to the surrounding neighbors if it is located in the country or to the municipality if it is located in a town. *City of Maroa*, 229 Ill. App. 3d at 514, 592 N.E.2d at 667 (section 912 provides that on abandonment all rights, title, and interest in the right-of-way pass to Maroa). Defendants, who purport to derive title from a 1988 deed of the former right-of-way, a quitclaim deed from ICGR to William C. Edwards, clearly have no right or title in the former right-of-way. Defendants argue, however, that in a quiet title action, plaintiffs must prevail on the strength of their title, not on the weakness of defendants' title.

In a quiet title action, plaintiff must recover on the strength of his own title, "although it is not required that a perfect title be

established." *Reynolds*, 20 Ill. 2d at 193, 170 N.E.2d at 130. The title of the defendants may be considered, and plaintiff may prevail, even without perfect title, if he establishes title superior to that of defendants. See *Wilder*, 267 Ill. App. 3d at 425, 642 N.E.2d at 499. Only if a plaintiff has no title in himself is he barred from maintaining an action for quiet title. *Ford*, 383 Ill. at 514, 50 N.E.2d at 715. It is certainly not clear that plaintiffs have *no* title in this right-of-way. Based on the information disclosed so far, it in fact appears that plaintiffs have very good title.

A trial court should grant a motion to dismiss only if the plaintiff can prove no set of facts that would support a cause of action. *Carver v. Nall*, 186 Ill. 2d 554, 557, 714 N.E.2d 486, 488 (1999). A plaintiff is not required to plead evidence in his complaint but is only required to allege ultimate facts. *Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill. App. 3d 659, 662, 646 N.E.2d 930, 932 (1995); *Kling v. Landry*, 292 Ill. App. 3d 329, 340, 686 N.E.2d 33, 41 (1997). The ultimate fact in this case is that plaintiffs had the right to this property under section 912.

Plaintiffs' deed gives them the portion of the west half of section 26 "lying [w]est of the former [w]est right-of-way line of the [ICR]." The trial court took that language at face value and concluded that plaintiffs had no rights to the property underlying the right-of-way. The railroad owned all of section 26 at one time, and all the present owners in section 26 derive their title from the railroad. The original deeds may have granted section 26 subject to the right-of-way, or the original deeds may have granted only the property to the left and right of the right-of-way and said nothing about the right-of-way. It makes no difference. The railroad could not reserve anything more than a right-of-way to itself. The railroad could not convert its right-of-way into a fee interest by failing to make any conveyance regarding the right-of-way. The underlying interest belonged to the United States, and by statute, the United States gave this interest to those who had received "the whole of the legal subdivision or subdivisions traversed or occupied by such railroad *** without the necessity of any other or further conveyance." 43 U.S.C. § 912 (1994).

This language from section 912 is not all that difficult. If the title of the United States to an entire quarter-section has been conveyed to an individual, except for a railroad right-of-way traversing that quarter-section, the owner of the quarter-section will own the former right-of-way "when the use and occupancy of said lands for such purposes has ceased." 43 U.S.C. § 912 (1994). If the quarter-section is not intact, if it has been divided into subdivisions, the owners of those subdivisions that were "traversed or occupied by such railroad" will

now own the right-of-way. 43 U.S.C. § 912 (1994). If a single individual does not own the land on both sides of the right-of-way, if two owners are involved, each will now own to the centerline. Under section 912, the right-of-way goes to the surrounding neighbors if it is located in the country.

If someone other than the railroad had reversionary rights to the property underlying the right-of-way, years ago, and neglected to mention those rights in deeds to subsequent grantees, is that fatal to any claim made by plaintiffs? The answer is no. A description in a deed includes the appurtenances to the tract even though they are not specifically mentioned in the deed. *Messenger*, 345 Ill. at 438, 178 N.E. at 40; *Chicago, Santa Fe & California Ry. Co.*, 128 Ill. at 357, 18 N.E. at 830-31. The deed to plaintiffs must be read as if it said, "and any appurtenances thereto, including any right to reverter acquired from the United States in the lands underlying that right-of-way." The argument that unmentioned appurtenances do not convey to the grantees in the deed, but descend to the heirs and devisees of the grantor, is contrary to sound principles of property law. *Prall*, 299 Ill. at 35-36, 132 N.E. at 286 ("nothing remained in the dedicator but a mere possibility of reverter," which "is inalienable[,] not assignable[,] not subject to be sold on execution, and not devisable").

Plaintiffs argue in their brief that "prior to the abandonment of the right-of-way by the railroad, no entity had a fee interest in the land located between the boundaries of the right-of-way," that "the last party to hold a fee interest in this land was the United States Government," and that "the issue for this court to consider is not who owns a fee interest in the land contained between the boundaries of the right-of-way itself, but who owns the land through which it passes." I would suggest that at least since 1922, when section 912 was enacted, some sort of potential interest existed in those persons who had been conveyed "the whole of the legal subdivision or subdivisions traversed or occupied by such railroad." 43 U.S.C. § 912 (1994). Even if, at the time the right-of-way was abandoned in 1986, the fee interest underlying the right-of-way was considered to have been vested in the United States government, that was no reason for dismissal of this suit. Plaintiffs allege that they acquired the interest of the United States. Plaintiffs certainly had title superior to that of defendants. See *Wilder*, 267 Ill. App. 3d at 425, 642 N.E.2d at 499.

The trial court acknowledged that plaintiffs' deed "did grant the land [w]est of the right-of-way" and that that was not in dispute. Plaintiffs' third-amended complaint alleges that "upon termination of the interest of [ICGR] in the subject land, the subject land was transferred to and vested in plaintiffs pursuant to the Act of 1922."

The complaint alleges that "the plaintiffs are owners in fee simple of the subject land and are now and have been three years last past continuously in possession of the property." Finally, the complaint alleges that "plaintiffs are successors in title and interest to whom title of the United States has been granted, conveying or purporting to convey the whole of the legal subdivision traversed or occupied by the subject land." The trial court was mistaken when it stated that "the [c]ourt does not believe that the [p]laintiff has sufficiently alleged that she has title as required" and refused to allow plaintiffs to file their third-amended complaint.